UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
05-10235-GAO

UNITED STATES OF AMERICA

v.

GEORGE SAMUELS

**MEMORANDUM AND ORDER ON**
**GOVERNMENT'S MOTION FOR DETENTION**

September 16, 2005

DEIN, M.J.

## I. GOVERNMENT'S MOTION FOR DETENTION

The defendant was charged first in a criminal complaint and then in an indictment with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and possession with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1). There is also a criminal forfeiture allegation under 21 U.S.C. § 853. An initial appearance was held on August 29, 2005, at which time the government moved for detention under 18 U.S.C. § 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A) on the grounds that the defendant is a danger to the community and poses a serious risk of flight. The defendant was represented by counsel at the initial appearance. A detention hearing was scheduled for September 1, 2005, and then continued to September 9, 2005 at the request of the defendant. An evidentiary detention hearing

was held on September 9, 2005, at which time the defendant was represented by counsel. Special Agent John Shankweiler of the DEA testified and was cross-examined by defendant's counsel. Following the hearing, the defendant requested time to submit proposed conditions of release and letters of reference, which were received by this court on September 14, 2005.

For the reasons detailed herein, this court concludes that there are no conditions which will reasonably assure the appearance of the defendant as required, and the safety of the community. The court, therefore, orders that the defendant be detained prior to trial.

## II. THE BAIL REFORM ACT

A. Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained. See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

B. The government is entitled to move for detention on grounds of danger to the community in a case that –

(1) involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[1] or more; or

(4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. § 3142(f).

C. In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any

---

[1] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 33, 336-37 (1st Cir. 1989).

other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

> (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (b) the weight of the evidence against the accused;
>
> (c) the history and characteristics of the person, including --
>
> > (i) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (ii) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

D. Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

First, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a federal crime of violence within the meaning of § 3156(a)(4) [or a state crime of violence within the meaning of § 3156(a)(4) if the offense would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which

the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act -- e.g., possession of cocaine, heroin, or more than 1000 pounds of marijuana, with intent to distribute, the Controlled Substances Import and Export Act, or any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later. See 18 U.S.C. § 3142(e).

Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under the provisions of 18 U.S.C. § 924(c) – i.e., use of or carrying a firearm during the commission of a federal offense which is a felony. See 18 U.S.C. § 3142(e).

Insofar as the latter "presumption" is applicable in assessing "risk of flight," the burden remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." In

striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight. The burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are not applicable to him for whatever reason advanced. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). This "only imposes a burden of production on a defendant. The burden of persuasion remains with the government." United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987) (per curiam); see also United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988). Even when a defendant produces "some evidence" in rebuttal, however, the presumption does not disappear. Rather, it retains some evidentiary weight, the amount of which will depend on how closely the defendant's case "resembles the congressional paradigm" and other relevant factors. Palmer-Contreras, 835 F.2d at 17-18; Dillon, 938 F.2d at 1416. See United States v. Jessup, 757 F.2d 378, 387 (1st Cir. 1985).

## III. DISCUSSION OF WHETHER DETENTION IS WARRANTED

"Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited. Based on the record before me, I find that there are no conditions which may be imposed which will reasonably insure the safety of the community or the defendant's presence at trial.

Since the defendant is charged with a violation of the Controlled Substances Act (21 U.S.C. § 801 et seq.) which carries a maximum sentence of ten years or more

imprisonment, the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community applies. As an initial matter, this court finds that the defendant has not met his burden of production in response to the presumption. Even without the presumption, however, I find that the government has proven by clear and convincing evidence that there are no conditions or combination of conditions which will reasonably assure the safety of other persons and the community. I also find that the government has proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure that the defendant will appear.

**A. <u>The Offense Charged And Weight Of The Evidence</u>**

The defendant is charged with a serious drug offense. He faces a term of imprisonment up to life, with a mandatory minimum of 10 years imprisonment if convicted of the drug crimes charged. Of critical importance to this court's decision is the fact that 26 kilos of cocaine were found in the trunk of a car parked in the defendant's garage. The defendant had been seen driving this vehicle on at least one previous occasion. On cross-examination defense counsel established that the car was owned by Select Auto Sales, which, according to defense counsel, is owned by a Russian organized crime figure. Nevertheless, this court does not find credible that someone inadvertently left such a large amount of drugs in the car.

Briefly, the evidence presented to the court in the detention hearing was as follows. In March 2005, the DEA in Springfield, Massachusetts, along with the State

Police, began investigating the co-defendant, Sergio Elpidio Alcantara-Saldana. It is the government's contention that Alcantara-Saldana receives large amounts of cocaine from New York and the Southern United States, uses vehicles from his car business (Pine Point Auto Sales) to transport the drugs and drug proceeds, and distributes the drugs to other individuals in Eastern Massachusetts, including the defendant George Samuels, for sale to the public. The investigation involved numerous wiretaps, during which thousands of calls were intercepted, surveillance, and the use of confidential witnesses ("CW") among other things. The conversations were all in code, and thus, this court must rely on the agents' interpretations of the conversations. This court recognizes the difficulties in so relying on third party interpretations. Nevertheless, as the agent testified, the fact that coded language was used for what would normally been innocent conversations (such as in response to "where are you"), causes this court to view the "plain language" of the conversations with scepticism. In other situations, the language used made no sense, such as conversations relating to the delivery of flowers when no flowers were seen during surveillance. Moreover, much of the agents' interpretation of conversations, such as where and when meetings were to be held, was proved to be accurate through surveillance. Thus, at this stage of the proceeding, this court found the agents' interpretations of the conversations to be credible.

A confidential witness ("CW") identified Samuels as a "kilogram quantity distributor of cocaine" in the Springfield for several years.

On July 2, 2005, intercepted phone conversations indicated that Alcantara-Saldana was going to meet with Samuels. Surveillance established that the meeting did, in fact, take place. Shortly after the meeting, Samuels called Alcantara-Saldana and in a coded conversation, told him that he believed that their was surveillance in the vicinity of Alcantara-Saldana's home. In fact, there was surveillance in place at the location identified by Samuels, which was called off after the phone call. Other intercepted conversations indicated that Alcantara-Saldana would be delivering drugs to Samuels, and that Samuels would be paying for the drugs. However, the conversations are all in code, and while the meetings took place and were surveilled, no drugs were seized.

Beginning on August 18, 2005, there were a series of phone calls indicating that Delgado was going to make a delivery to Samuels, and that Samuels was going to have his customers check out the product. Samuels was arrested on August 27, 2005. In his residence, agents seized $6,000 in cash and a .357 magnum in a suitcase in a closet. The gun was not loaded. Inside the trunk of a car inside the garage, agents found 26 kilos of cocaine inside a box. One of the kilos had a cut indicating that the cocaine had been tested.

In the days following his arrest, Samuels' wife withdrew over $123,000 from their bank accounts. While this court infers nothing sinister from these withdrawals, they do show that the defendant has access to a considerable amount of cash.

In connection with his arrest, co-defendant Alcantara-Saldana's house was searched. One-half ounce of cocaine and $65,000.00 in cash was found -- $9,000 in

one location and $56,000 in another location. At another location, which agents believe serves as a stash house for Alcantara-Saldana, the search revealed two .357 magnums and 1 bullet.

**B. History And Characteristics Of The Defendant**

The defendant was born on November 12, 1971 in Springfield, Massachusetts, and is a lifelong resident of the Springfield. He graduated high school from Bridge Academy and attended Springfield Technical Community College for one semester.

he defendant and his wife have been together for 14 years. They have three children, George age 11, Gevon age 7, and Jaden born prematurely a few days before the defendant's arrest. The defendant's parents live in Springfield, as does his brother.

The defendant is the owner of GS Trucking, a subcontracting business retained by larger asphalt companies. No specifics about this company were provided by pre-trial services. According to defense counsel, although not included in the pre-trial services report, the defendant worked for the Department of Mental Health for the Commonwealth of Massachusetts. Also according to defense counsel, the defendant made money buying and selling homes.

The defendant has a juvenile and adult criminal record, though he has never been incarcerated. As an adult, in 1990, 1992 and 1993 he was found guilty of being a disorderly person and paid fines. There is some indication that in 1989 the defendant was charged with possession of cocaine with intent to sell, but the disposition of that charge is unknown.

**C. Danger To The Community**

The government has met its burden of proof, by clear and convincing evidence, that there are no conditions or combination of conditions of release which will reasonably assure the safety of other persons and the community. There is substantial evidence that the defendant was engaged in a large scale drug operation selling cocaine. He clearly had access to significant amounts of cash, and a firearm was found in his home. The sizeable amount of cocaine found in the defendant's possession indicates that either he traffics in large quantities of cocaine or is trusted by others who engaged in such unlawful behavior to help them in the drug business.

The rebuttable presumption which applies in the case of drug charges was premised, in part, on Congress' conclusion "that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S. Rep. No. 225, 98th Cong., 1st Sess. 13 (1983). While the defendant has proposed restrictive conditions of release, including the posting of a bond secured by real estate, and release on electronic monitoring, none of the conditions would prevent the defendant from continuing to engage in the sale of drugs. Recognizing that the burden of persuasion remains with the government at all times, I find that the presumption of dangerousness has not been rebutted.

**D. <u>Risk Of Flight</u>**

I also find that the record evidence before this court warrants a conclusion that no condition or combination of conditions -- short of pretrial detention -- would reasonably assure the appearance of the defendant. The prospect of a significant jail sentence provides a clear and unequivocal impetus to flee, and the defendant has easy

access to cash. There is also evidence that he has a close relationship with the co-defendant Alcantara-Saldano, who has access to false identification documents. Under such circumstances, this court finds that there is a high risk of flight.

This court recognizes that the defendant has proposed conditions of release, including posting a secured bond. However, given the defendant's easy access to cash, and the large scale of the charged drug trafficking organization, the court does not find that these proposed conditions can reasonably insure either the defendant's appearance at trial or the safety of the community.

Similarly, the defendant argues that he would not put his relationship with his family at risk by violating conditions of release. This relationship, however, did not prevent the defendant from storing a firearm in his home, or from having 26 kilos of cocaine in the car in his garage.

This court appreciates the numerous letters of support which were sent on behalf of the defendant, and this detention decision was not made lightly. Nevertheless, based on the entire record before me, I find that the government has met its burden of proof.

## IV. ORDER OF DETENTION

IT IS ACCORDINGLY ORDERED that the defendant remain DETAINED pending trial, and it is further Ordered --

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge