UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-10235-GAO |
| ) | |
| GEORGE SAMUELS ) | |

**<u>DEFENDANTS MOTION FOR REVOCATION OF DETENTION ORDER</u>**

    Now comes the defendant in the above entitled action and moves this Honorable Court pursuant to Title 18 U.S.C. §3145 (b) for an order of revocation of an Order of Detention entered against him by the Court Dein J. dated September 16, 2005,and as his grounds and basis therefore, asserts the following;

    1. The order of Detention contains findings of fact unsupported by the record evidence.

    2. The Magistrate Judge failed to conduct a legally adequate review of Electronic Surveillance Warrants which formed the basis of the Government's evidence at the defendant's Detention Hearing upon demand in violation of the defendant's statutory rights under Title 18 U.S.C. §2515.

    3. The introduction of evidence derived from unlawful electronic surveillance formed the sole and exclusive basis offered by the Government in support of the defendant's detention.

    4. The Government failed to introduce sufficient record evidence to meet its burden of persuasion to establish the defendant was a risk of flight by preponderance of the evidence.

    5. The Government failed to introduce sufficient record evidence to meet its burden of persuasion to establish the defendant posed a danger to any person or the community by clear and convincing evidence.

    6. The defendant introduced sufficient evidence to rebut the presumption under Title 18 U.S.C. §3142 (e).

    WHEREFORE, the defendant moves the Order of Detention entered against him be revoked and  for and order establishing conditions of bail. All as more fully set forth in the accompanying memorandum of law filed in support herein.

    Respectfully submitted,

                                                           THE DEFENDANT

                                                    BY: /s/ Vincent A. Bongiorni
                                                    95 State Street - Suite #309
                                                    Springfield, MA 01103
                                                    (413) 732-0222
                                                    BBO #049040

## CERTIFICATE OF SERVICE

     I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing to Assistant United States Attorney Neil Gallagher, United States Courthouse, Suite #9200, I Courthouse Way, Boston, MA this 6th day of December 2005.

                                                                             /s/ Vincent A. Bongiorni

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal No. 05-10235-GAO |
| ) | |
| GEORGE SAMUELS ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO REVOKE DETENTION ORDER**

Pursuant to 18 U.S.C. §3145 (b), the Defendant, George Samuels, moves this Court to revoke the Magistrate Judge's Detention Order and release him on conditions.

**A. PROCEDURAL BACKGROUND**

The defendant, George Samuels, was arrested August 27, 2005 on a complaint charging he and others with violating Title 21 U.S.C. 841. Arrested on the same day were co-defendants, Saldana and Zapata, a fourth defendant remains at large. An indictment was returned September 4, 2005, and defendants, Samuels and Saldana, were arraigned before the Court Dein J. on September 9, 2005. Defendant Zapata was released on conditions and was arraigned separately. An Evidentiary Hearing was conducted on the same date on the Government's Motion for Detention. The Government called one witness, DEA S/A Shankwieler, whose testimony recounted the results of a State authorized wiretap order and several renewals directed against Zapata, Saldana, and Samuels. The defendants made objection to the introduction of any evidence derived from the State wiretap warrant based upon the warrants facial defects. At the conclusion of the hearing the Magistrate took the matter under advisement and issued an Order of Detention on September 16, 2005.

**FACTS**

In the early part of 2005, several events occurred which spawned the investigation against the defendants. DEA agents in New York were executing a Title III order directed against a Domincan National named Montolio. Agents believed this individual to be a major source of

cocaine. This investigation led to the arrest of an individual known as Beltre. A cellular telephone utilized by Beltre was found to have substantial contact with a telephone number in the Springfield area. In February 2005 members of the Massachusetts State Police Drug Task Force, operating in Hampden County, arrested two individuals in connection with a multi-kilo cocaine transaction. This arrest revealed cellular telephone contact between the arrested parties and the same telephone contacted by Beltre. During this same period DEA Boston arrested a multi-kilo drug suspect who began to cooperate and provide information regarding drug trafficking in the Springfield area. Agents in Springfield were able to identify the cellular telephone number as being used by defendant, Zapata. Beginning in March of 2005 a State wiretap order was issued for this telephone authorizing interceptions for fifteen days. Additional orders were sought for a series of cellular telephones utilized by Saldana and monitored through July 2005. In August 2005 the last of wiretap orders issued permitting interception over defendant Samuels cellular telephone. At the conclusion of the August wiretap order, arrest and search warrants were executed upon the defendants and their residences. During a search of the trunk of a motor vehicle in defendant Samuels garage, agents located a locked hard plastic tool box. A search of the box resulted in the seizure of 26 Kilos of cocaine. Although a thorough search of Samuels person and residence was conducted, a key to the locked box could not be found. Additionally, title to the searched vehicle was held in the name of Select Auto Sales, a company controlled by one Stefaglo, an individual believed by DEA Agents to be a drug dealer with significant connection to Russian Organized Crime figures.

## **STANDARD**

The Court reviews the Magistrate Judge's Detention Order *de novo*. United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 747 (1987). Detention shall be ordered only where the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e).

The Bail Reform Act sets forth procedures to be used in determining whether there are conditions of release which will reasonably assure the appearance of the person as required and

the safety of any person and the community. It provides a list of factors that the officer is to weigh when doing so. Title 18 U.S.C. §3142 (g); creates several" rebuttal presumptions" that the officer is to use when applying the basic standard. This case concerns one of the "rebuttal presumptions" that the Act creates. It states, subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq*).

The Act allows a defendant to present all the special features of his case directly to the Magistrate. The less those features resemble the congressional paradigm , the less weight the Magistrate will likely give to Congress's concern for flight. The individual characteristics of a case and the precise weight to be given the presumption are matters for a Magistrate to take into account within the framework of factors set out in §3142.

The Court is not required to impose conditions that *guarantee* the defendant's appearance or safety of the community but, rather, conditions that *reasonably assure* those objectives. Tortora, 922 F.2d at 884.  Such a requirement is consistent with "Congress's clear intent that only a limited number of defendants be subject to pretrial detention." Id.  Thus, even if the Court finds that the defendant is a flight risk or poses a danger to the community (the first layer of analysis), it must also determine that no conditions or combination of conditions exist to assuage those concerns (the second layer of analysis).  The Court, in determining whether the defendant should be released on conditions should look to the factors enumerated in 18 U.S.C. §3142, which include: (1) the nature and circumstances of the offense charged, including whether the offense involves a narcotic; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including past conduct; and (4) the nature and risk of danger to a person or the community posed by the defendant's release.  18 U.S.C. §3142(g).

A finding of probable cause to believe that the defendant violated a provision of the Controlled Substance Act for which the maximum term of imprisonment is 10 years or more triggers a rebuttable presumption that no conditions or combination of conditions exist.   18 U.S.C. §3142(e).  Where a rebuttable presumption exists, the defendant bears the burden of

producing <u>some</u> evidence to show that the presumption is unwarranted in the circumstances of the case at bar. <u>United States v. Jessup</u>, 757 F.2d 378, 381-82 (1st Cir. 1985). Once the defendant presents <u>some</u> evidence in rebuttal, the presumption becomes but one factor to be weighed alongside the factors enumerated in 18 U.S.C. §3142(g). <u>Id.</u> at 384. The burden of persuasion always remains with the government to prove by a preponderance of the evidence that no conditions will assure the defendants appearance or by clear and convincing evidence that no conditions will reasonably assure the safety of the community.

The Magistrates Order correctly notes Congress findings Major Drug Traffickers as a class pose a special danger of flight. The Magistrate Order also reflects the presumption does not disappear once a defendant introduces some evidence in rebuttal. The standard for revue then becomes how closely the defendant's case resembles the congressional paradigm. <u>United States v. Palmer-Contreras</u> 835 F2d. 15 (1st Cir. 1987).

In order to apply this standard accurately, it is necessary to review the Act's Legislative history in order to determine the narrow class of persons Congress envisioned would not be released. Those individuals Congress described as a "reasonably identifiable group of defendants who pose a special risk to the safety of others."

The Bail Reform Act of 1984, which radically altered prior law (The Bail Act of 1966), was largely modeled after a statute enacted in the District of Columbia providing for pre-trial detention. D.C. Code Title 23 §1321. This statute had been implemented to deal with several problems facing prosecutors in the District of Columbia. By and large, the District was facing a large urban minority community in which drug dependant drug dealers were continuing to commit new offenses while out on bail. The statute permitted pre-trial detention on the assumption that future criminality could be accurately assessed, and the probability a defendant would commit new crimes, while on release, could be related to the nature and *seriousness of the offense* charged, the *existence of prior arrests and convictions*, and a *history of drug addiction*. 1984 U.S.C. & Cong. Report pg.3192.

What emerges from an analysis of this legislation is that Congress placed special emphasis on drug related factors and prior criminal history finding it to be "in accordance with empirical research, conducted in the District of Columbia, which indicated a significant correlation between drug use, and both failure to appear and pre-trial re-arrest and between

criminal history and pre-trial re-arrest" 1984 U.S. Code & Cong. Report pg.3205. See also testimony of Charles Ruff, U.S. Attorney for the District of Columbia, July 29, 1981, Committee on the Judiciary House of Representatives 97th Congress Vol. No. 94 pgs.58-60. "We make judgements not on classes of defendants, but individualized judgements about whether a particular individual first committed the crime charged and second has a history of criminal conduct which enables us to predict there is a high risk of harm to the community."

The second major influence on Congress in enacting this legislation was the dramatic rise in drug crimes in the Southern District of Florida. Impetus in the Senate for this legislation came from Senator Lawton Chiles of Florida, the leading sponsor of S.1253 which ultimately became the Bail Reform Act. The late 1970's had seen an explosion of the cocaine trade and Miami had become the national point of entry for massive amounts of illicit drugs.

Citing revenue for traffickers of as much as $500,000.00 monthly, Senator Chiles provided the Senate Subcommittee with multiple instances of drug defendants in the Southern District of Florida, posting substantial cash bails and absconding. Included with the Senators remarks was a report prepared for Congressman William Hughes by the Administrative Office of the United States Courts which documented the problems of pre-trial release in narcotics prosecutions in the Southern District of Florida. Distilled to its essential elements, the report detailed 85% of the defendants charged with drug offenses who failed to appear had lived in the district for less than one month. The overall failure to appear rates were much higher than comparable districts. Over half of the persons charged with significant drug crime were non-citizens primarily form Central and South America and Cuba, although the report was unable to precisely determine the citizenship of over 26% of those prosecuted the report concluded most were "illegals" from Central and South America. Senator Chiles Bill, as originally drafted, required the existence of a substantial probability to conclude a person had committed a Federal Drug Offense. Once this factor was established "the court would look at a series of factors if the Government could establish by clear and convincing evidence the person arrested fell into one of five categories, then the presumption would shift. The person arrested would be held pending trial unless he could present special mitigating factors to justify his release on bail." The Senators original Bill set out 5 factors a judge would consider.

Those factors were:

    1. Does the person arrested have a previous narcotics conviction?

    2. Is the person on probation or parole for a previous felony narcotics offense?

    3. Is the person arrested an illegal alien?

    4. Is the person arrested in possession of a false passport?

    5. Is the person a fugitive from justice? (See testimony of Senator Lawton Chiles, Senate Subcommittee on the Constitution, October 1981 pgs.56-70).

Those factors outlined above were incorporated, although not word for word, in the Act at Title 18 §3142 (g)(3)(A) and (B). From a review of the entire record of multiple hearings conducted by the House and Senate, it becomes clear the major drug defendant Congress had in mind as risk of flight was a person with limited ties to the community, almost always a legal or illegal alien from Central or South America, capable of earning substantial amounts of cash, with substantial ties and resources, outside the United States, and Foreign contacts to escape prosecution with relative ease. The kind of person Congress envisioned as being a danger to the community appears to be the type of individual the District of Columbia statute was aimed at, the drug addicted recidivist drug dealer whose criminal history and addictive nature made the probability of committing crimes while on release highly likely.

In this case the Magistrate's Order is silent with respect to an individualized comparison of this defendant to the previously discussed Congressional model. Indeed, the Magistrate's Order concluded the defendant had not met his burden of *production,* notwithstanding the defendant established he had lifetime ties to the community, a valid marriage, three young children, a steady employment history of over fifteen years, and a criminal history of three misdemeanor arrests, all of which were over ten years old. (Magistrates Order p.7). Contrast United States v. Dillon 938 F.2d 1412 (1st Cir. 1991) 1st Circuit decision finding defendant had presented sufficient evidence to rebut the presumption where defendant established he was married with children, had never left the country, had no drug related criminal record, was employed full time, owned real estate, and had family prepared to post real estates sureties.

The defendant here proffered the exact same evidence as the defendant in Dillon and had proposed similar conditions of release (see Magistrate's Order p.10). It appears the Magistrates Order was based exclusively upon the weight of the drugs recovered from the automobile and not

an objective review of the additional factors the Magistrate was duty bound to consider. Nor did the Magistrate make particularized findings as to this individual. In lieu of such findings, the order repeats stock phrases such as "Congress concluded the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community"... "none of the conditions would prevent the defendant from continuing to engage in the sale of drugs" (Order @ p.11) without any real assessment of whether this defendant matched the Congressional paradigm of those most likely to re-offend and more importantly failed to apply the appropriate legal standard. The test isn't whether the proposed conditions will prevent a defendant from committing a new crime, if such were the case, no one would be released. The test, simply put, is whether the proposed conditions reasonably address the risk associated with the particular individual keeping in mind the Congressional model.

      In this regard, defendant Samuels, is immediately distinguishable from those individuals Congress had in mind. In his case there is no evidence of drug addiction or prior conviction for drug crime. His established roots in the community, solid family life, steady employment history, and lack of ties to areas outside of the country stand in stark contrast to those individuals Congress was concerned about.

      Moreover, there was no record evidence the individuals in New York or the Dominican Republic, who dealt only with Zapata, are the type of connections considered by Congress when creating the presumption, i.e. drug connections who would wish to harbor and financially support Samuels since no evidence of any relationship with them was demonstrated. See S.Rep No. 224, 98th Cong. 1st Sess. 20 (1983) reprinted in 1984 U.S. Code Cong. 817 & Admin. News 3203.

      The defendant's personal characteristics, e.g., no criminal record, and the likelihood that he would actually receive less than ten years imprisonment if convicted, are relevant to the weight that a Magistrate or district court judge gives to the presumption. See United States v. Jessup, 757 F.2d @ 387.

      The Order was equally lacking in establishing a nexus between this individual and risk of flight. The Magistrate concluded "this court recognizes that the defendant has proposed conditions of release including the posting of a secured bond. However, given the defendant's easy access to cash and the large scale of the charged drug trafficking organization the court does not find that these proposed conditions can reasonably assure either the defendant's appearance

at trial or the safety of the community". Nothing in the record before the court indicated the defendant had access to unlimited amounts of cash as established through the testimony of DEA S/A Shankweiler and Defendant's proffer. The defendant established his financial assets were the product of a series of sales of real estate the defendant had owned going back to 1992. The defendant had accounted for all of the sales on his tax return and the Government had no evidence the properties were the fruits of crime. Indeed, the record demonstrated the agents seized all of the family's bank and financial records at a time when the defendant's wife had just given birth, had no access to her checking accounts and was left with three small children and no automobile. Defendant proffered the funds taken from the parties joint accounts after defendant's arrest were all for legitimate family expenses, including attorney's fees. Additionally, there was no record support to suggest Samuels even knew any of the other individuals beyond Saldana, nor was there any evidence to suggest the relationship was so close Saldana would assist Samuels to flee if he were so disposed. This fact coupled with Saldana's own detention belies this assertion by the Magistrate. The order fails to establish, beyond bare conclusion, why the proposed conditions of a $350,000.00 bond, secured by the equity in the defendant's and his parents real estate, together with electronic monitoring were inadequate to address this limited risk.

## THE FACIAL VALIDITY OF THE WIRETAP WARRANTS

The defendant objected to the Court's use of the information derived from electronic surveillance at the initial detention hearing.

Counsel for defendant moved pursuant to Title III of the Federal Wiretap Statute, Title 18 §2510 *et seq*. and specifically Title 18 §2515 requesting the Court not consider the submitted evidence without first inspecting said orders authorizing electronic surveillance

Title 18 §2515 provides "whenever any wire or oral communication has been intercepted no part of the contents of such communication and no evidence derived therefrom may be received into evidence in any trial, hearing, or other proceeding on or before any court, grand jury, deposition, office, agency, regulatory body, legislative committee, or other authority of the United States, a state or political subdivision thereof if the disclosure of that information would

be in violation of this Chapter."

This section of Title III has been held applicable to bail revocation proceedings. See <u>United States v. Farese</u>, 611 F. 2nd 67 (5th Cir. 1980), Search Warrant Applications. "The use and disclosure of wiretap information in warrant affidavits does not remove that information from the protection of Title 18 sec. 2515."  See <u>Certain Interested Individuals, John Doe I-V v. Pulitzer Pub. Co.</u>, 895 F2d 460 (8th Cir. 1990).

Under Title 18 §2515 an aggrieved party has the right to challenge the facial sufficiency of any warrant or order authorizing electronic surveillance before the introduction of direct or derivative evidence of such interception in any hearing.  <u>In Re Grand Jury Matter</u>. 798 F.2d 91 (3rd Cir. 1986).

The defendant believes the various warrants authorizing the interception of oral and wire communications whose fruits were introduced during the Detention Hearing and considered by the Court are all facially invalid under M.G.L.Ch. 272 §99 and Title 18 U.S.C. §2510 *et seq*.  The warrants fail to contain a particular description of the oral wire communication to be intercepted.  M.G.L. Ch. 272 §99 E(1), I(4) and Title 18 U.S.C. 2518 (4)(c).  The warrants all failed to provide a statement for service as required by M.G.L. Ch. 272 §99 I(b) and Title 18 U.S.C. 2518 (8)(d).

The defendant believes this Court's *De  Novo* review should require a reexamination of these issues.

**FACTORS SUPPORTING RELEASE ON CONDITIONS**

"Detention determination must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant."  <u>Tortora</u>, 922 F.2d at 888.  Defendants should not be "lumped together" with other co-defendants or by alleged memberships in criminal enterprises.  <u>United States v. Patriarca</u>, 948 F.2d 789, 794 (1st Cir. 1991).  The facts of this case are not of a degree where no condition or combination of conditions will assure the defendants appearance or the community's safety.

**The nature and circumstances of the offense charged– Indictment**

1. The defendant is charged with a violation of Title 21 §841 (a) (1). The

indictment alleges the penalty provisions of §841 (b)(1) (A) (ii) apply. The statute provided for a maximum sentence of life with a minimum of 10 years and a fine.

2. The defendant is a criminal History Category I. The defendant's offense level is found at U.S.S.G. §2D1.1 The defendant believes the present Base Offense Level 34 applies with a resulting Guideline Sentence of 151-188 months.

3. No acts of violence by the defendant are alleged by the Government.

4. Defendant was not a leader of criminal activity.

5. Defendant is eligible for relief from the mandatory minimum nature of the crime alleged pursuant to Title 18 U.S.C. §3553 (f), the so called "Safety Valve".

**History and Characteristics of the Defendant**

The defendant, George Samuels, is 34 years of age, married with three children, ages 11, 7, and 3 months. He was married in 1998 and employed for the last 6 years as owner of G.S. Trucking, LLC.. Mr. Samuels was employed for a 10 year period with the Department of Mental Health before beginning his own trucking business. His family presently resides at 175 Brittany Road, Springfield, MA. He and his wife own the residence. The defendant is a lifelong resident of Springfield and was educated in local schools and holds a High School diploma. His parents are divorced, and each has remarried. Both parents own their own residences. His mother's home is mortgage free and his father's residence has over $50,000.00 in equity.

The defendant has no history of violence and is not alleged to have brandished a weapon during the crime charged. An unloaded handgun was found in his home. The firearm was fingerprinted and compared with the known prints of the defendant-without a positive result. The defendant is not a gang member, nor was he observed to have any criminal association during the course of the investigation. The defendant's financial resources

  were several pieces of real estate and a bank account which held the proceeds of a series of sales of real estate by the defendant and his wife between 1992 and 2005.

  The defendant's entire immediate and extended family reside in Hampden County in Western MA. The defendant has no history of substance abuse, nor of dependency on drugs or alcohol. The defendant has never had a failure to appear in court. The defendant has three prior misdemeanor convictions for being a disorderly person. The defendant has no ties to any Foreign Country or association with individuals not citizens of the United States.

### SAFETY OF THE COMMUNITY
### ASSURANCE OF APPEARANCE IN COURT

a. The magistrate should have consider the issue of detention "with Congress's general findings in mind." Jessup, 757 F.2d at 385. In creating the presumption, Congress determined that flight among drug traffickers was a significant risk because of:

> the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

Id. (citations omitted). Having presented evidence that the defendant does not fall into the category of drug traffickers that Congress envisioned, the defendant has successfully rebutted the presumption. See also United States v. O'Brien, 895 F.2d 810, 816 (1st Cir. 1990) (finding that although defendant had lived abroad in the past, no evidence that his ties remain close.)

### PROPOSED CONDITIONS

*Secured Bond*

  a. The defendant offers to post a $350,000.00 bond secured by pledging three

    parcels of real estate belonging to the defendant and his two parents.

b. The defendant agrees to maintain the full time employment he was engaged in prior to his arrest.

c. The defendant agrees to restrict his travel to Hampden County and to surrender his passport.

d. The defendant agrees to report to Pre-trial Services on a daily basis.

e. The defendant agrees to be placed on Home Detention to be monitored by electronic monitoring and to leave his residence only to maintain his employment, and for reasonable medical and legal visits. The defendant also agrees to enter into a forfeiture agreement with the Government as to the pledged real estate, in the event of a breach of conditions.

## **CONCLUSION**

For all of the reasons set forth above the defendant asks the court to order the relief requested.

Respectfully submitted,

DEFENDANT

BY: /s/ Vincent A. Bongiorni
95 State Street - Suite # 309
Springfield, MA 01103
(413) 732-0222
BBO #049040