```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
     vs.                        )    05-CR-10235-04-GAO
                                )
GEORGE SAMUELS                  )
                                )
```

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

The United States respectfully submits that defendant GEORGE SAMUELS' motion to revoke the Order of Pre-trial Detention in this case should be denied.  First, there is a presumption that defendant should be detained.  Second, no evidence was presented to rebut the presumption of dangerousness.  Third, in addition to the presumption, there is overwhelming evidence of defendant's guilt including the seizure of approximately 26 kg of cocaine from defendant's garage worth more than a half million dollars.

I.   Factual Background

The investigation that led to the indictment in this matter began in early 2005.  Through wiretaps, physical surveillance, and information from cooperating witnesses, the investigation identified GEORGE SAMUELS as a kilogram cocaine dealer who obtained multi-kilogram quantities of cocaine from lead defendant Sergio Alcantara-Saldana.  On August 27, 2005, agents executed a search warrant at SAMUELS's residence and seized approximately twenty-six kilograms of cocaine in the trunk of a motor vehicle parked in SAMUELS' garage.

A.   The Wiretap Investigation/Seizures of Cocaine

Based on telephone toll records, agents in Massachusetts were able to connect multiple kilograms seizures of cocaine in New York and Massachusetts to a cellular telephone number used by co-defendant Cesar Zapata, Alcantara's partner and the manager of a business known as Pine Point Auto Sales in Springfield.  In particular, on January 28, 2005, agents in New York seized approximately 12 kilograms of cocaine from Salvador Beltre in an apartment in New York City.  Incident to arrest, agents seized a cellular telephone which had frequent contact with telephone numbers in Springfield, MA, including telephone number (413) 557-218-5157, subscribed to Jose Gil.

On February 15 and 16, 2005, Massachusetts State Police (MSP) arrested two individuals (Hector Delacruz and Carlos Sanchez) in separate undercover transactions.  Between seizures from the person and seizures as a result of search warrants, each was linked to two kilograms of cocaine.  Sanchez was found in the possession of approximately $300,000 in cash.  Based on toll records, the same cellular telephone number subscribed to Jose Gil, (413) 218-5157, had frequent contact with the cell phones used by both Delacruz and Sanchez in the undercover deals.[1]  On February 21, 2005, (413) 218-5157 was changed to (413) 883-7649.  Thereafter, through physical surveillance on March 31, 2005,

---

[1] Specifically, on February 15 and 16, Sanchez's phone had approximately five calls with (413) 218-5157.  Delacruz's phone had approximately 10 calls with  (413) 218-5157 between January 31 and February 11, 2005.

agents in Massachusetts were able to identify the user of this cellular telephone as Cesar Zapata when agents called (413) 883-7649 and observed Zapata answer the phone.

    B.    <u>Cooperating Witnesses</u>

During the investigation, one cooperating witness (CW-1) identified Alcantara has a supplier of cocaine and indicated that CW-1 had obtained 10-15 kilograms of cocaine from Alcantara about 5 to 6 times each week.  The same CW identified Zapata as Alcantara's drug partner.  A second cooperating witness (CW-2) identified SAMUELS as kilogram dealer of cocaine for the past three years.

    C.    <u>The State Wiretaps and Surveillance</u>

On June 2, 2005, DEA began intercepting Zapata's cellular telephone (413-883-7649) pursuant to MA state wiretap authorized pursuant to Massachusetts General Law Chapter 272, Section 99. On July 1, 2005, DEA began intercepting wire communications over several of Alcantara's cellular telephones pursuant to MA state law.  During the course of these wire interceptions, Alcantara frequently dropped cell phones and obtained new cell phone numbers following events where Salanda and Zapata indicated on the wiretap that they thought they were being followed by the police.  Towards the end of the investigation, on August 17, 2005, agents began intercepting one of SAMUEL's cellular telephone's pursuant to a state wiretap.

One of Alcantara's more frequent contacts and cocaine customers was GEORGE SAMUELS.  During the course of the wiretap

investigation, agents often followed Alcantara to SAMUEL's residence at 61 Appaloosa Lane in West Springfield, MA. Agents also frequently observed SAMUEL's meet with Alcantara and Saladana's residence at 31 Braywood Circle in Springfield.

For example, at approximately 10:00pm, on August 18, 2005, surveillance was established in the area of 61 Appaloosa Lane, West Springfield, MA (the residence of GEORGE SAMUELS) in anticipation of a meeting between SAMUELS, Alcantara, and Zapata, following intercepted phone calls about a meeting. Several calls were intercepted where Alcantara and SAMUELS indicated that Alcantara was returning from New York with "Flowers" (believed to be cocaine) for SAMUELS. Several other calls indicated that Alcantara was providing SAMUELS with some type of product which SAMUELS was going to have some of his customers check out. At approximately 10:32pm, SA Shankweiler and GS Senecal observed Alcantara and Zapata arrive at 61 Appaloosa Lane in a green Ford Expedition (MA Dealer Reg. 7410). SA John Barron then observed this vehicle in the driveway of SAMUELS' residence for approximately 12 minutes before he observed it leaving the area.

On August 21, 2005 at approximately 8:54pm, Agents intercepted several calls between SAMUELS and Alcantara in which SAMUELS and Alcantara arranged to meet that evening. In one of these calls, SAMUELS told Alcantara that he had "papers" (believed to be drug proceeds) for Alcantara. At approximately 10:45pm, SA John Barron observed a purple mini-van, driven by Alcantara, arrive at 61 Appaloosa Lane. SA Barron observed Alcantara exit the vehicle and meet with SAMUELS who was waiting

at the rear garage door to the residence at 61 Appaloosa Lane (the same are where days later agents seized 26 kg of cocaine). SAMUELS then immediately handed Alcantara a small dark colored bag and the two individuals engaged in a short conversation before Alcantara returned to the minivan and left the area.

    D.   <u>The Arrest and Seizure of Drug Proceeds and 26 kg of Cocaine from SAMUELS' Garage</u>

Agents arrested SAMUELS on August 27, 2005 at approximately 6:20 p.m. during a car stop on Worthington Street in Springfield, MA. During a search incident to arrest, SA Barron seized approximately $3,209 in cash from SAMUEL's right front shorts pocket. Agents also searched the center console of the black Nissan Armada that SAMUELS was driving and seized approximately $20,000 in cash.

Shortly thereafter, agents executed a federal search warrant of SAMUELS' residence at 61 Appaloosa Lane. During the execution of the warrant, agents seized among other items a Smith and Wesson .357 magnum revolver from the master bedroom and the key and title to a black 2003 Mercedes CL 55 which was parked in the garage to the residence. Agents used this key to open the trunk of the black Mercedes. Inside the trunk, agents found a storage bin with the right side of bin was slightly ajar. With a flash light, and without touching the storage bin, agents were able to see inside the bin and observed several black rectangular packages consistent with kilogram quantities of cocaine. Agents then removed the bin from the trunk and found approximately 25 kilograms of cocaine in the storage bin and another kilogram of cocaine in a Nike Shoe box inside the storage bin. The suspected

cocaine returned a positive field test for cocaine.

## II.  Argument

First, there is a statutory presumption under the Bail Reform Act that SAMUELS should be detained pending trial.  Under § 3142(e), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officers finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . " 18 U.S.C. § 3142(e).

In this case, a grand jury indictment provides probable cause to believe that a defendant has committed an offense for which he may receive a sentence of imprisonment for ten or more years for violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1990); see United States v. Vargas, 804 F.2d 157, 163 (1st Cir.1986).  Therefore, there is a rebuttable presumption that defendant SAMUELS should be detained pending trial.  SAMUELS has been charged an indictment with CSA offenses which carry statutory mandatory minimum sentences of 10 years.  Furthermore, since a firearm was seized from SAMUELS' residence, defendant is not eligible for relief under the safety valve provisions of 18 U.S.C. §3553(f).  See United States v. Moss, 887 F.2d 333, 337

(1st Cir. 1989)(per curiam)(presumption triggered by statutory penalty of maximum term of 10 years regardless of likelihood of shorter sentence under the Sentencing Guidelines).

Second, defendant has introduced <u>no</u> credible evidence to rebut the presumption of dangerousness.  Instead, the only "evidence" presented was through cross-examination of the government's witness that the Mercedes in SAMUELS's garage with the 26 kg of cocaine was held in the name of Select Auto Sales, a business that defendant claims is connected to Russian Organized Crime.  Not only do these claimed facts fail to rebut the presumption (and the more than half million wholesale value of cocaine found in SAMUELS' garage), but if true this fact (connection to Organized Crime) increases rather than detracts from SAMUELS' danger to the community.

While a defendant need only produce "some evidence" to rebut this presumption.  <u>United States v. Jessup</u>, 757 F.2d 378, 384 (1st Cir.1985), the presumption does not disappear.  <u>Dillon</u> 938 F.2d at 1416.  The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight. <u>Id</u>.; <u>United States v. Perez-Franco</u>, 839 F.2d 867, 870 (1st Cir. 1988)(per curiam)(triggering of presumption remains factor militating against release even if defendant rebuts presumption); <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 18 (1st Cir.1987) (per curiam).  Here, the presumption, taken together with the seizure of 26 kg of cocaine, a firearm in the residence, and

wiretap evidence connecting SAMUELS to the cocaine conspiracy was more than sufficient to support Judge Dein's order of pre-trial detention in this matter.  See United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003)(pretrial detention orders are reviewed independently with a "degree of deference" for district court's determinations).

Third, under the Bail Reform Act, an appeal of a detention order under 18 U.S.C. § 3145(c) should be filed promptly.  See United States v. Preseley, 52 F.3d 64, 70 (4th Cir. 1995)(defendant's appeal of pretrial detention order not timely; notice of appeal was not given until more than 10 days after entry of detention order).  In this case, the original detention order was entered on September 16, 2005.  Defendant waited until almost two months later to seek an appeal of the Magistrate's detention order.

Finally, defendant has proffered no new evidence that has a "material bearing" on the issue of detention which would justify a reopening of the detention hearing under 18 U.S.C. § 3142(f). Instead, defendant has simply re-proffered the same facts that were presented to Magistrate Judge Dein.

Accordingly, defendant's motion should be denied and defendant SAMUELS should be detained pending trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

```
                              By:  /s/ Neil J. Gallagher, Jr.
                                   Neil J. Gallagher, Jr.
                                   Assistant U.S. Attorney
Dated: December 21, 2005
```