IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 05-CR-10235-06-GAO |
| v. | ) | |
| | ) | |
| CARLOS SANCHEZ | ) | |
| GEORGE SAMUELS | ) | |

**MOTION TO RESOLVE CONFLICT OF INTEREST ISSUES**

The United States respectfully moves this Court to conduct a hearing pursuant to its supervisory authority and Federal Rule of Criminal Procedure 44(c) to determine whether a conflict of interest arises from attorney Vincent A. Bongiorni representation of CARLOS SANCHEZ and defendant GEORGE SAMUELS and, if so, whether such conflict can be waived.  In the event that the Court determines that a conflict does indeed exist and cannot be waived, the government requests that the Court enter an order disqualifying attorney Bongiorni from further representation of one or both defendants in this matter.  In support of this motion the government states as follows:

**I.   Relevant Factual Background**

The investigation that led to the indictment in this matter began in early 2005.  Through wiretaps, physical surveillance, and information from cooperating witnesses, the investigation identified GEORGE SAMUELS as a kilogram cocaine dealer who obtained multi-kilogram quantities of cocaine from lead defendant Sergio Alcantara-Saldana ("Sergio").  On August 27, 2005, agents executed a search warrant at SAMUELS's residence and seized approximately twenty-six kilograms of cocaine in the trunk of a

motor vehicle parked in SAMUELS' garage.

As part of the probable cause for the initial wiretaps on a cellular phone used by Sergio's partner, Cesar Zapata, law enforcement agents described a seizure of cocaine, a firearm, and large amounts of cash that took place on February 16, 2005 from defendant CARLOS SANCHEZ.  The day before the seizure, on February 15, 2005, investigators from the Massachusetts State Police (MSP) arrested two individuals, Hector Delacruz and Luis Ventura with a kilogram of cocaine in an undercover operation. Delacruz and Ventura agreed to cooperate and in an unrecorded but monitored call to their source of supply, CARLOS SANCHEZ.

The next day, February 16, 2005, at around 10:00 a.m., Ventura called "Carlito" (SANCHEZ) again under the direction of the MSP to request a kilogram of cocaine.  Around the same time, MSP had established surveillance outside SANCHEZ's residence at 80 Euclid Avenue in Springfield.  MSP observed SANCHEZ leave his residence in a maroon Nissan Pathfinder and followed him to Handy Self Storage at 40 Congress Street in Springfield.  MSP observed SANCHEZ enter the area near a locker bin identified as #3683. MSP then followed SANCHEZ as he drove to the agreed upon meeting location at the YMCA.  After SANCHEZ entered the YMCA parking lot, SANCHEZ got out the car and MSP arrested SANCHEZ.  MSP searched his Nissan Pathfinder and seized a kilogram of cocaine in the center console armrest.  Incident to arrest, MSP found a

set of keys on SANCHEZ which included keys to two safe deposit boxes and $1,842 in cash.

From the set keys, MSP discovered that one of keys fit the lock to bin #3683 at Handy Self Storage. MSP obtained a state warrant for the bin. During the search, a canine hit on a black duffle bag. Inside the bag, MSP found a money counter, a drug ledger, rubber bands (for money), scales, and about another kg of cocaine. MSP also found a lease agreement in the name of Carlos SANCHEZ, $59,000 in cash, cutting material, and a loaded Smith and Wesson .22 caliber handgun with an extra clip.

Thereafter, MSP executed a state warrant at SANCHEZ's residence at 80 Euclid Street. During the search, MSP found $20,000 in cash in book safe, a scale and another $11,550 in cash in bag in the closet. On February 18, 2005, MSP executed search warrants for the two safety deposit boxes associated with the keys found on SANCHEZ's person. Inside one box, MSP seized $213,100 in cash wrapped in the same manner as the $20,000 found in the book safe at SANCHEZ's residence.

Based on toll records, the telephone which Ventura used to contact SANCHEZ (and which was found on his person), between February 15 and 16, SANCHEZ's phone had approximately five calls with (413) 218-5157, the cellular telephone used by Cesar Zapata that was, beginning on June 2, 2005, intercepted pursuant to a state wiretap warrant.

After the arrest of Sergio, Zapata, and Samuels, on August

27, 2005, SANCHEZ talked about their arrests and his prior involvement with them in a recorded jail call on August 30, 2005 with his wife Maricela Rosa.  During the call, SANCHEZ told Rosa, 'Imagine . . . they fell . . . All of them, all of them, all of them.'  Rosa asked, 'Where?'  SANCHEZ, 'There. Something very big . . . the investigation from where the statute is (New York) to Boston' (Investigation referred to New York targets supplying MA targets).  Rosa asked, 'Someone set them up . . . a set up?'  Sanchez answered, 'No, this is what happened . . . my attorney (Vince Bongorni, the same attorney for GEORGE SAMUELS in federal court) showed me . . . papers and everything, names, and everything.  You remember the one who played with me, you already know . . . '  Later in the call, Rosa asked when this happened and SANCHEZ replied that this happened the first day of the weekend (Saturday, August 27th, the day of the arrests).  **SANCHEZ said his attorney (Bongorni) thought it was better because it made him look smaller.**  SANCHEZ then said that it came out in the newspapers that there was an investigation and that ' . . . they all fell this week, the one that starts with "S" and ends in "O" (SERGIO).  SANCHEZ then repeated, 'Starts with "S" ends in "O" all of them fell, even the owner (ZAPATA) over there.'  SANCHEZ said that they caught them through the telephones.

## II.  Legal Standard - Conflict of Interest and Dual Representation

The Sixth Amendment guarantees the right to effective assistance of counsel to all criminal defendants.  <u>Strickland v.</u>

Washington, 466 U.S. 668 (1984). As the Supreme Court has observed, the purpose of that Amendment "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). See also, United States v. Coneo-Guerrero, 148 F.3d 44, 46 (1st Cir. 1998). Thus, while federal courts recognize a presumption in favor of a defendant's counsel of choice, the right to counsel of choice is not absolute. Such a presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Id., 486 U.S. at 164.

"When two or more defendants share the same counsel, conflicts of interest might arise." United States v. Hernandez-Lebron, 23 F.3d 600, 603 (1st Cir. 1994); see United States v. Salado, 339 F.3d 285, 291-92 (conflict of interest exits where counsel's introduction of evidence or presentation of argument would significantly benefit one defendant, but severely damage defense of another defendant whom counsel is also representing); Reynolds v. Champman, 253 F.3d 1337, 1347 (11th Cir. 2001)(counsel's concurrent representation of defendant and co-defendant created conflict because client's had opposing interests); United States v. Weaver, 265 F.3d 1074, 1077 (D.C. Cir. 2001)(conflict existed because defendant's counsel represented co-defendant, whose interests were adverse to those of defendant). A district court may disqualify an attorney where

a mere "potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 160.

In this case, a significant potential for conflict exists with the joint representation of attorney Bongiorni of both SANCHEZ and Samuels.  As indicated in the recorded jail call, SANCHEZ and Samuels clearly have adverse interests.  Samuels was caught with 26 kilograms of cocaine in a car in his garage. SANCHEZ was arrested with a kilogram of cocaine and a firearm in a storage locker.  Both defendants, at trial and at sentencing, have an interest in making another defendant appear more culpable.  For this reason, the government asks that the Court conduct a hearing pursuant to United States v. Foster, 469 F.2d 1 (1st Cir. 1972).

Balancing SANCHEZ's and Samuels's right to select their own counsel against their rights to conflict-free representation "requires that joint representation be permitted only if each defendant knowingly and voluntarily assumes the risk of potential conflicts." Coneo-Guerrero, 148 F.3d at 46.  Accordingly, the government respectfully requests the Court to hold a Foster hearing to:

> comment on some of the risks confronted where
> defendants are jointly represented to insure
> that defendants are aware of such risks, and
> to inquire diligently whether they have
> discussed the risks with their attorney, and
> whether they understand that they may retain
> separate counsel, or if qualified, may have
> such counsel appointed by the court and paid
> for by the government.

<u>Foster</u>, 469 F.2d at 5; <u>see</u> Fed. R. Crim. P. 44(c).  If the Court makes such inquiry, both SANCHEZ and Samuels will have a heavy burden of persuasion challenging any later conviction in this matter on the grounds of ineffective assistance of counsel. <u>Foster</u>, 469 F.2d at 5.  After a <u>Foster</u> hearing, each would "bear the burden of showing that the joint representation caused an *actual* conflict of interest."  <u>Coneo-Guerrero</u>, 148 F.3d at 49 (emphasis added).

## **CONCLUSION**

For all the above reasons, the government respectfully requests that the Court hold a hearing to determine whether Attorney Vincent A. Bongiorni's representation of both SANCHEZ and SAMUELS' creates a conflict of interest and, if so, whether or not that interest is subject to waiver and whether one or both defendants are willing to waive that conflict.

                Respectfully Submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

By: /s/ Neil J. Gallagher, Jr.
    Neil J. Gallagher, Jr.
    Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

```
                            _____
                            /s/ Neil Gallagher
                            Neil J. Gallagher, Jr.
                            Assistant United States Attorney
```

Date: March 13, 2006