**UNITED STATES DISTRICT COURT**
                       **DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs.     ) | 05-CR-10235-04-GAO |
| ) | |
| GEORGE SAMUELS  ) | |
| ) | |

<u>UNITED STATES' SUPPLEMENTAL OPPOSITION TO DEFENDANT'S
MOTION TO REVOKE DETENTION ORDER AND MOTION FOR RECONSIDERATION</u>

The United States respectfully submits this supplemental opposition to defendant GEORGE SAMUELS' motion to revoke the Order of Pre-trial Detention. In this opposition, the government responds to defendant's argument that the wiretap order that authorized the interception of wire and oral communications on defendant's cellular phone was insufficient on its face. The government also moves this Court to reconsider its prior determination that allows defendant to make a challenge to the validity of the wiretap order without the filing of a motion to suppress.

I.   <u>Argument</u>

During the hearing on February 22, 2006, defendant argued that 18 U.S.C. §2515 required Magistrate Judge Dien (and the District Court on review) to make a judicial determination at a detention hearing held pursuant to 18 U.S.C. §3142(f) about the facial validity of the wiretap order authorizing a wiretap. Defendant further argued that the wiretap order was facially invalid because it failed to properly specify the type of communications to be intercepted as required by 18 U.S.C.

§2518(4)(c). The Court agreed to consider the facial validity of the wiretap orders.

First, the government respectfully requests the Court to reconsider this decision. As further described below, Section 2515 is inapplicable to detention hearings under the Bail Reform Act of 1984. Instead, the primary purpose of Section 2515 is to provide a remedy against unlawful electronic surveillance that predated the enactment of Title III ("the Wiretap Statute"). Second, contrary to defendant's assertions, the wiretap order, which authorized the interception of wire and oral communications over defendant SAMUELS' cellular phone, described with sufficient particularity the type of the communications to be intercepted and the offenses to which they related as required by 18 U.S.C. §2518(4)(c).

II. Section 2515 of the Wiretap Statute Does Not Apply to Detention Hearings

Defendant is not entitled to a preliminary judicial determination of the legality of court ordered wiretap surveillance at a detention hearing. Instead, defendant must file a motion to suppress, as required by 18 U.S.C. §2518(10)(a). Defendant substantially overstates that applicability of Section 2515.

In defendant's motion for the revocation of Judge Dien's detention order, defendant cited the Fifth Circuit's decision in United States v. Farese, 611 F.2d 67 (5th Cir. 1980) for the

proposition that Section 2515 requires a judicial determination of the legality of electronic surveillance at a detention hearing. Farese pre-dates the enactment of the Bail Reform Act of 1984.[1] In Farese, the government moved to revoke the defendant's bond after the defendant had traveled outside the district in violation of the court's order. Id. at 69. At the hearing, the government asserted that the information about the defendant's travel outside the district was derived in part from electronic surveillance which had not been previously disclosed. Id. The defendant argued he was entitled to an evidentiary hearing on the legality of the electronic surveillance under both Section 2515 and 2518(9).[2] The Fifth Circuit held that the district court could not rely on the *ex parte* representations of the government regarding the legality of electronic surveillance and that Section 2515 did apply to bail revocation hearings. Id. at 70.[3]

After the passage of the Bail Reform Act in 1984, the First Circuit disagreed with the holding of Farese in United States v.

---

[1] Defendant also cited the Eight Circuit's opinion in Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corporation, 895 F.2d 460 (8th Cir. 1990) for the proposition that Section 2515 applies to bail hearings. That case makes no mention of bail hearing and instead pertains to the pre-indictment disclosure of wiretap evidence in the context of First Amendment claims.

[2] Title 18, United States Code, Section 2518(9) requires the contents of electronic surveillance to be disclosed ten days prior to any trial or hearing.

[3] The court, nonetheless, did not decide whether the Fourth Amendment's exclusionary rule applied to bond revocation proceedings. Id. at 71, n. 5.

Angiulo, 755 F.2d 969 (1st Cir. 1985). In Angiulo, the Court held that the government was entitled to present evidence of electronic surveillance at a detention hearing, irrespective of the defendant's challenge to its legality. Angiulo, 755 F.2d at 974; see In re Globe Newspaper, 729 F.2d 47, 54 (1st Cir. 1984). "Otherwise, the challenge of a defendant to lawfully obtained materials might prove sufficient to keep highly relevant information from the judicial officer or delay the initial bail hearing, contrary to the 'immediacy' requirement of §3142(f)." Angiulo at 974.

   While the First Circuit in Angiulo did not directly discuss the statutory language of Section 2515 and Farese, the court in United States v. Accetturo, 623 F.Supp. 746 (D.NJ 1985) did and relied on the First Circuit's decisions in Angiulo, 755 F.2d 969 and In re Globe Newspaper, 729 F.2d 47 as the primary support for this rule. During the detention hearings in Accetturo, the government introduced evidence of wiretap interceptions through testimony, even though it had not disclosed the applications, affidavits, orders or transcripts of the wire interceptions. Id. at 756-57. Defendants cited Farese, 611 F.2d 67 for the proposition that the Section 2515 applied to bail hearings and required disclosure of these wiretap materials. The district court rejected this position, disagreed with the holding in Farese, noting that Farese was a pre-Bail Reform Act of 1984

4

decision, and held that in the context of detention hearings:

> Congress did not intend nor is it constitutionally required that Sections 2515 and 2518(9) be followed in a Section 3142 pretrial detention or release hearing.

Accetturo, 623 F.Supp. at 759.

The Court further reasoned that Bail Reform Act required prompt judicial determinations which would not be possible if Magistrate Judges were required to conduct mini-trials on the admissibility of wiretap evidence. Id. at 758.

In addition to the First Circuit case law that has rejected defendant's position, the case law that discusses the scope, applicability, and history of Section 2515 clearly indicates that Section 2515 was not intended as a supplemental remedy to Section 2518(10)(a).[4] Instead, the Congressional impetus for the Section 2515, enacted on June 19, 1968 as part of the Wiretap Statute, was prior illegal electronic surveillance during the 1960's that took place without court authorization. See Gelbard v. United States, 408 U.S. 41, 51 (1972)("[a]long with criminal and civil remedies, [Section 2515] should serve to guarantee that the standards of the new chapter [Title III] will sharply curtail the unlawful interception of wire and oral communications"), quoting U.S. Code. Cong. & Admin. News 1968, p. 2184.

The limited applicability of Section 2515 is demonstrated in

---

[4] Section 2518(10)(a) provides that an "aggrieved party" may move to suppress the contents of electronic surveillance by motion *before* the trial, hearing, or proceeding unless there was no opportunity to make such a motion.

5

the cases that discuss the rights of recalcitrant grand jury witnesses to disclosure of electronic surveillance when they are confronted with questions they suspect are derived from illegal electronic surveillance. In particular, the Supreme Court in Gelbard held that Section 2515 created a statutory right for grand jury witnesses to invoke a violation of Title III as a defense to contempt charges when these witnesses made a preliminary showing that the questions posed to them were derived from illegal electronic surveillance. Gelbard, 408 U.S. 47, 59-60; see also In re Grand Jury Investigation, 437 F.3d 855, 857 (9th Cir. 2006)(If a grand jury witness makes a preliminary showing that he was the *victim of illegal electronic surveillance*, the government must unequivocally affirm or deny the use of such surveillance). The Court in Gelbard found support in a corollary statute, 18 U.S.C. §3504, which created a statutory right for a party to seek disclosure of *illegal* electronic surveillance that took place prior to June 19, 1968, the effective date of the Wiretap Statute. Id. at 52-53.[5]

In contrast, in this case, the government has provided full

---

[5] Gelbard nevertheless left open the question whether a grand jury witness may refuse to answer when the illegal electronic surveillance was authorized by court order. Id. at 61, n. 22; see In re Percisco, 491 F.2d 1156, 1161 (2d Cir. 1974)(a grand jury witness may raise the illegality of electronic surveillance under Section 2515 only if there is an absence of a necessary court order, the government concedes illegality, or a court has previously declared the surveillance illegal); compare In re Lochiatto, 497 F.2d 803, 806-07 (1st Cir. 1974)(a contempt witness-defendant is entitled under Section 2515 to assert the defense of the illegality of electronic surveillance, but does not have unlimited recourse to means necessary to maximize those defenses).

wiretap surveillance discovery as required by the Local Rules, including the contents of the intercepted calls, the line-sheets, applications, affidavits, court orders, and minimization instructions. For this reason, the remedy that defendant must seek is a motion to suppress.

Finally, defendant's argument that Section 2515 requires a judicial determination of the facial validity of the wiretap orders in this case conflates two different sections of Title III. Section 2515 states that evidence of electronic surveillance may not introduced at any trial, hearing, or other court proceedings "if the disclosure of that information would be in violation of that Chapter." 18 U.S.C. §2515. Section 2515 makes no mention of a legal mechanism to challenge the facial validity of wiretap orders. It simply states that if the electronic surveillance violated Title III - that it was illegal electronic surveillance - it cannot be used. Instead, the mechanism to challenge the facial validity of wiretap orders is found in Section 2518(10)(a) which states in pertinent part that:

> Any aggrieved person[6] in any trial, hearing or proceeding ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that –
> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its

---

[6]Section 2510(11) defines an aggrieved person as one "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."

>                face; or
>                (iii) the interception was not made in conformity
>           with the order or authorization or approval.
>
>      Such motion *shall be made before the trial, hearing, or
>      proceedings* unless there was no opportunity to make
>      such motion or the person was not aware of the grounds
>      of the motion.
>
>      18 U.S.C. §2518(10)(a)(emphasis supplied)

Thus, under the plain language of the statute, Section 2518(10)(a) requires a defendant to file a motion to suppress and to do so before the hearing. Defendant cannot have two bites at the apple. He must file a motion to suppress.

III. The August 17, 2005 Wiretap Order Described the Types of Communications to Be Intercepted With Sufficient <u>Particularity</u>

Defendant argues that the wiretap warrant, signed on August 17, 2005 by Massachusetts Superior Court Judge Tina S. Page, is insufficient on its face because it failed to contain a particular description of the oral and wire communications to be intercepted. This argument fails because the wiretap order, when read as a whole together with the application and supporting affidavit, clearly described the types of communications to be intercepted with sufficient particularity.

Federal law governs the admissibility of wiretap evidence in federal prosecutions irrespective of state law. <u>United States v. Charles</u>, 213 F.3d 10, 19-20 (1st Cir. 2000). Under federal law, Section 2518(4)(c) of the Wiretap Statute requires that each order authorizing the interception of wire communications must

specify "a particular description of the type of communication to be sought to be intercepted, and a statement of the particular offense to which it relates." The inclusion of the particularity requirement of Section 2518(4)(c) was prompted by the Supreme Court's decision in Berger v. New York, 388 U.S. 41, 58-60 (1967) which struck down the New York state wiretap statute on several grounds including a failure to require any description of the "particular conversations or communications" to be intercepted. See S. Rep. 1097, 90th Cong., 2d Sess. 13 (1968). As described in the Second Circuits decision in United States v. Tortorello, "[p]articularity in an eavesdrop or wiretap application and order is critical to the constitutionality of a surveillance." United States v. Tortorello, 480 F.2d 764, 779 (2d Cir. 1973). Such a requirement "prohibits strategic intelligence surveillance by requiring, among measures, that the application identify the particular offenses and the particular conversations anticipated." Id. at 779.

Nevertheless, "conversations are not like physical evidence. They cannot be described with as much precision, nor can an applicant for a surveillance order know of their actual content in advance." United States v. Gambale, 610 F.Supp 1515, 1538 (D.C. Mass 1985). For this reason, the case law outlines a "pragmatic approach" for the particularity requirement of Title III:

> A specific crime or a specific series of crimes must be identified. Although the nature and type of the anticipated conversations must be described, the actual content need not and cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime. (Citation omitted). The order must be broad enough to allow interception of any statements concerning a specified pattern of crime.

Tortorello, 480 F.2d at 780.

Furthermore, "In determining whether the order and application are sufficiently particular, the papers as a whole must be considered, including especially those portions which recite facts intended to establish probable cause." Tortorello, 480 F.2d at 780; See United States v. Spillone, 879 F.2d 514, 517 (9th Cir. 1989)("We must look to the entire order to determine if it complies with the statute"); United States v. Scott, 331 F.Supp 223, 245 (D.C.D.C. 1971)(Order read in its entirety, as it must be done, described types of communication with sufficient particularity). In this case, the entire order, when read as a whole together with the affidavit and application, is clearly adequate and describes the types of communications and the offenses to which they relate with more than sufficient particularity.

The August 17, 2005 order authorizing wire interceptions on defendant SAMUELS'S cellular telephone was ninth wiretap order signed in the same wiretap investigation. In support of the application for the interception of wire and oral communications,

10

the Commonwealth submitted a 39-page affidavit[7] of DEA SA John Barron and MSP Trooper Michael Martin which described the progress of the investigation and prior drug related intercepted phone conversations between Jose Delgado (who was later identified as Sergio Alcantara-Saldana) and George Samuels. On page 4, paragraph 6(a) the affiants named the criminal offenses for which there was probable cause to believe that the targets of the investigation had been committing:

> There is probable cause to believe that George SAMUELS, Jose DELGADO, Cesar ZAPATA, . . . and others, known and unknown (hereinafter referred to as the principals), are engaged in an ongoing conspiracy to commit the crimes of distribution of cocaine, trafficking in cocaine and conspiracy to commit same. Distribution of cocaine, cocaine trafficking and conspiracy to commit same are designated offenses within the meaning of M.G.L. c. 272 Section 99B(7) (hereinafter referred to as the specified narcotics offenses).

In the next paragraph, 6(b) on page 4, the affiants listed with exhausting particularity the expected nature of these intercepted communications:

> There is probable cause to believe that particular wire and oral communications of the principals, concerning the specified narcotics offenses, will be obtained through the interception of such communications to and from the TARGET TELEPHONE. In particular, these communications are expected to concern the specifics of the above offenses, including: (i) the nature, extent and methods of the acquisition and distribution of cocaine, (ii) the nature, extent and methods of operation of the business of the principals and others yet unknown; (iii) the identities and roles of

---

[7] Because of the sensitive nature of the information contained in the affidavit, the entire affidavit is being submitted to the Court under seal. The defendant has a copy of this affidavit. Only one redacted page has been filed as an exhibit.

>accomplices, aiders and abettors, co-conspirators and participants in the illegal activities; (iv) the distribution and transfer of the contraband and money involved in those activities; (v) the existence and location of records of these illicit activities; (vi) the existence and location of records used to finance their illegal activities; and (vii) the location of narcotics and items used in furtherance of the specified narcotics offenses. In addition, these wire communications are expected to constitute admissible evidence of the commission of the above described offenses.

Based on the information in the Commonwealth's application and affidavit, Judge Page signed the order. See Tortorello, 480 F.2d at 781 ("The validity of the orders turns upon the validity of the applications"). At paragraph A, the order specifically listed the criminal violations for which there was probable cause that the target subjects had committed. At paragraph C, the Order specifically found that:

>There is probable cause to believe that particular oral and wire communications concerning these offenses will be obtained through the interceptions for which authorization is herein applied and that these will provide evidence relative to these offenses. In particular, these oral and wire interceptions will assist in establishing the identification and association of the members of the conspiracy including those members whose identify is presently unknown. These interceptions will assist in providing evidence as the scope and detail of the inner workings of the conspiracy, including its plans, methods, and activities in distributing cocaine and trafficking in cocaine. Such communications are material to the investigation and are not legally privileged.

After making these and other findings, Judge Page then ordered that:

>The types of communications which may be intercepted are oral and wire communications occurring over the above described TARGET TELEPHONE. These intercepted communications are essential to continued

>           identification of persons and places being utilized in
>           the furtherance of this conspiracy.

Finally, the Order directed monitoring agents:

>           Accordingly, communications which at first appear to be
>           *unrelated to the specified narcotics offenses* may be
>           intercepted for no longer than two minutes.
>           Thereafter, they may be spot-monitored for no more than
>           fifteen seconds in any subsequent minuted to determine
>           whether they remain *unrelated to the designated
>           offense*. (Emphasis supplied).

The instant case is similar to the Tenth Circuit's decision in United States v. Williams, 45 F.3d 1481 (10th Cir. 1995). In Williams, the defendant argued that the wiretap order lacked sufficient particularity in describing the type of communication to be intercepted and a statement of the particular offense to which it related. The order simply stated that the designated law enforcement officials were authorized to "intercept wire communications to and from the above-described telephones." The Court upheld the validity of the order because the orders clearly stated 1) the phone numbers; 2) that there was probable cause to believe the interception of these numbers would concern drug offense, and 3) listed the specific offenses. Similarly, in United States v. Turner, 528 F2d. 143, 153-55 (9th Cir. 1975), the Ninth Circuit held than an order which identified conversations concerning "narcotics" was sufficient to satisfy the statue. See United States v. Carnerio, 861 F.2d 1171, 1179 (9th Cir. 1988)(wiretap order complied with statute when it specified the particular statutes being investigated and stated

that the defendant was being investigated for distributing controlled substances); United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989)("By specifying the specific crimes being investigated, the warrant satisfied Berger")

Defendant's argument focuses on a line-by-line analysis of the state wiretap warrant.  Under defendant's theory, if one line is insufficient, the whole wiretap should be thrown out.  This is the wrong analysis.  Instead, the Court should look at the entire order, including the affidavit in support of the wiretap application since the Judge's findings were based on the information presented to her in the affidavit.  As a whole, the wiretap order clearly provides sufficient particularity to limit the discretion of law enforcement agents to listen to only phone calls related to drug trafficking activities.

Accordingly, defendant's motion should be denied.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:  /s/ Neil J. Gallagher, Jr.
     Neil J. Gallagher, Jr.
     Assistant U.S. Attorney

Dated: March 15, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

```
                            _____
                            /s/ Neil Gallagher
                            Neil J. Gallagher, Jr.
                            Assistant United States Attorney
```

Date: March 16, 2006