UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-10235-GAO |
| ) | |
| GEORGE SAMUELS ) | |

**DEFENDANT'S SUPPLEMENTAL MOTION IN OPPOSITION TO GOVERNMENT'S SUPPLEMENTAL MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER AND MOTION FOR RECONSIDERATION**

PROCEDURAL HISTORY

On September 1, 2005, the Defendant George Samuels was indicted by a Grand Jury in the District of Massachusetts. On September 9, 2005, the Defendant appeared before the Court Dein, Magistrate Judge for arraignment and hearing on the Governments Motion for Detention. During the course of the Detention Hearing the Government sought to introduce evidence derived from electronic surveillance of the Defendant and others. The Defendant objected on the grounds the Order authorizing the electronic surveillance was insufficient on its face. The Defendant moved pursuant to Title 18 U.S.C. 2515 to exclude the evidence from the Detention Hearing. The Magistrate Judge failed to rule on the Defendant's objection. On September 16, 2005, the Defendant was ordered detained. On December 6, 2005, the Defendant filed a Motion seeking Revocation of the Magistrates Order pursuant to Title 18 U.S.C. 3145 (b). On December 2005 the Government filed its opposition to the Defendants Motion. On February 22, 2006, a hearing was held on the Defendant's Motion before The Court O'Toole, J.   The Defendant raised the same objection to the evidence proffered by the Government and the Court referred the matter for further briefing.

ARGUMENT

In its opposition to Defendant's Motion to Revoke the Order of Detention the Government posits two separate arguments. First, the Government seeks a reconsideration of the

Court's original determination allowing the Defendant to mount a challenge to the contested evidence claiming §2515 does not permit such a challenge. Secondly, the Government claims the Order authorizing the interceptions was facially valid.

Section 2515 of Title 18 is applicable to detention hearings. In its opposition to Defendant's Motion, the Government relies on the First Circuit's decision in United States v. Anguilo, 755 F. 2nd. 969 (1985) to support its claim. The Government takes the position Anguilo holds the Government is "entitled to present evidence of electronic surveillance irrespective of the Defendant's challenge to its legality." (Governments Memo at pg. 4) The Government then cites the following language from Anguilo as support for that proposition; " Otherwise law fully obtained materials might prove sufficient to keep highly relevant informations from the judicial officer or delay the initial bail hearing contrary to the immediacy requirement of §3142 (f)."

The Government's editing of the above referenced quote serves to place the language out of context, no doubt to support the Government's position. In order to accurately assess the meaning to be given this language the quote must be read in its entirety. The passage as it appears in full reads as follows: He [THE DEFENDANT] first claims that the district court could not rely on the evidence obtained by electronic surveillance, the legality of which he challenges. We previously wrote, however, in In re Globe Newspaper, 729 F.2d 47, 54 (1st Cir. 1984), a case in which both defendant and the government were parties, that the provisions of federal law "allow the disclosure of [information obtained through electronic surveillance] to the court conducting . . . bail hearings," at least until a court has decided that the material was not obtained legally. Otherwise, the challenge of a defendant to lawfully obtained materials might prove sufficient to keep highly relevant information from the judicial officer or to delay the initial bail hearing, contrary to the "immediacy" requirement of § 3142(f). (Emphasis supplied).

As the Government concedes, Anguilo did not directly address §2515. The issue in Anguilo was whether the Bail Reform Act of 1984 applied to an accused charged by the Government before the Act took effect.

In order to buttress their position the Government then directs the Court's attention to United States v. Accetturo, 623 F. Supp. 746 (D. NJ 1985) While it goes without saying, the Accetturo decision is not controlling precedent in this district; once again the Government's characterization of its holding is legally flawed. In Accetturo, the Defendants failed to challenge

2

the electronic surveillance evidence at their initial detention hearing, in fact one of the Defendant's utilized some of the evidence at the hearing in order to obtain his client's release. After the Government moved the Court for reconsideration of the Magistrates Order granting Conditions of Release, the Defendants then challenged the introduction of the electronic surveillance evidence previously introduced without objection. Although the District Judge in Accetturo found the reasoning of the First Circuit in Anguilo more persuasive than Farese, he did not decide the case on that issue. In lieu of reaching the merits of the Defendant's §2515 claim the Court found the Defendant's had waived their rights, ruling as follows; "Assuming arguendo that Defendants are correct in their contention Title III's provisions are applicable, I find they clearly waived their rights in that regard." Accetturo at pg. 759.

Unlike the Defendants in Accetturo, the Defendant Samuels did not waive his right to object to the introduction of this evidence. The Defendant here made his objection seasonably and renewed it. The Government points to no authority other than those discussed above to support its claim First Circuit case law has rejected the Defendant's position. Indeed, a fair reading of both decisions belies the Government's claim.

In addition to the lack of jurisprudence to support its position the Governments secondary argument lends force to the Defendant's §2515 claim. As the Government correctly points out; Title 18 U.S.C. §2518 (10)(a) provides any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire, or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that . . .

> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire, or oral communication, or evidence

derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

The Government contends the Defendant "conflates two different sections of Title III." (Governments memo at pg. 7). The Defendant does not in this regard the Defendant directs the Court's attention to the Supreme Courts holding in <u>Gelbard v. United States,</u> 408 U. S. 41 (1971) interpreting the interplay between the various sections of Title III. "Although the Government points to statements in the Senate report to the effect that §2518(10)(a) 'limits' §2515, we read those statements to mean that suppression motions, as a method of enforcing the prohibition of §2515, must be made in accordance with the restrictions upon forums, procedures, and grounds specified in §2518(10)(a). . . . " 'This definition (§2510(11)) defines the class of those who are entitled to invoke the suppression sanction of §2515 . . . through the motion to suppress provided for by §2518(10)(a) . . . U.S. Code Cong. & Admin. News 1968, p. 2179. 'The provision (§2515) must, of course, be read in light of §2518(10)(a) . . . which defines the class entitled to make a motion to suppress.' U.S. Code Cong. & Admin. News, p. 2185. 'This provision (§2518(10)(a)) must be read in connection with §§2515 and 2517 . . . which it limits. It provides the remedy for the right created by §2515.' U.S. Code Cong. & Admin. News, p. 2195. <u>Gelbard</u> at pg. 56.

In this case the Defendant was not possessed of the entire scope of discovery sufficient for pleading all possible theories for suppression of the evidence at the time he had appeared for the detention hearing. The Government had provided counsel with a State Wire Tap Inventory Notice, which included a copy of the Wiretap Order. After reviewing the Order and deeming it facially defective, the Defendant moved pursuant to §2515 to have evidence derived from it excluded. The Defendant recognized a single identifiable defect on the face of the Order. An "aggrieved party" under §2510 (11) may make such an objection before the hearing unless there was no opportunity to do so. As previously stated, a Defendant is not usually in a position to articulate all of the bases which may exist for suppression at his initial detention hearing.

Section 2518 (10) (a) provides three separate basis for suppression; only one of those recognized by the statute is at issue here. The claimed basis for suppression at the detention

Hearing was made pursuant to §2518 (10) (a) (ii), the order of authorization or approval under which it was intercepted is insufficient on its face.

Under the Government's theory, a Defendant served with an inventory notice would be required to file a written motion to suppress articulating all of his suppression theories prior to his initial detention hearing even if the Government had failed to provide him with complete copies of the orders. The case law makes clear this view of Title III is incorrect. The First Circuit's decision in In Re Lochiatto, 497 F. 2nd 803 (1st Cir. 1974) illuminates the Defendant's claim. Analyzing a claim by a Grand Jury Witness for access to Title III materials before being compelled to testify, the Lochiatto Court discussed the criteria for claims made under the three separate prongs of §2518 (10) (a).  "The triple objective, then, is to minimize the delay, secure the Government's interest, if any, in secrecy, and protect a defendant's right to assert the defenses Congress established.". . . " If a witness should challenge an approval as being 'insufficient on its face', the means for challenge were at hand an inspection of the face". . . "a  facial viewing by the court would have been sufficient to demonstrate facial validity or invalidity" . . .  "Unlawfulness and non-conforming interception under subsections (i) and (iii) have no such built-in methods for expeditious testing. That there can be no such testing, unless a witness is fortuitously in possession of evidence to support a challenge or the government affirms illegality, cannot have been the intent of Congress. "We see a clue to treating challenges under (i) and (iii) in our approach to challenges under (ii). Even though the former sections do not, because of the variety of challenges which could be raised under them, limit defenses to facial insufficiency, we see no reason not to analogize and confine scrutiny to what is revealed by the authorizing documents, to test whether they suggest any unlawfulness in authorization or implementation." Lochiatto at pg . 806.

Only when claims are advanced under §2518 (10)(a) (i) and (iii) is the Court required to look beyond the face of the order.  In response to the Defendant's claim the Government now seeks to expand the record for review by proffering copies of the Application and accompanying Affidavit; recognizing as it must, the defect apparent on the face of the Order.

The Government relies heavily on United States v. Tortorello, 480  F. 2nd 764 (2nd Cir. 1973) *See* Government's memo at pg. 9. Indeed , all of the Circuit Opinions cited by the Government cite Tortorello as well.  The flaw in the Governments argument is it fails to read

5

Tortorello closely. The State Wiretap Order at issue in Tortorello, like the Order here, failed to contain a particularized description of the conversations to be intercepted and the offenses to which they applied. Tortorello at 779. Unlike this case however, the Judge who issued the Order in Tortorello incorporated by reference into the Order specific paragraphs of the accompanying affidavit which in fact provided a particular description. The following passage from Tortorello makes this fact abundantly clear. "It would have been better if he [Judge Schweitzer] had stated in the Orders themselves more precisely". . . "But he did incorporate the affidavits into the Order and we have held the affidavit sets forth a particular description" Torterello at 781. Additionally, none of the Circuit cases relied on by the Government provides any detail about the descriptions in the Order.

The Defendant claims the analysis here is limited to the facial validity of the Order because the Orders in this case did not incorporate by reference any other material. Nor does the applicable basis for suppression under §2518 (10) (a) (ii) contain any ambiguity about the nature of the defect upon which suppression may be had. The Government points to no law in this circuit which interprets 2518 (10) (a) (ii) to the contrary. If the Government claims the right to expand the record in this case, the Defendant believes he would be entitled to an Evidentiary Hearing to test the proof offered in support by the Government.

## THE RULE OF LENITY

A statutory expression of one thing is an applied exclusion of other things omitted from the statute. When a statute is plain and unambiguous it is interpreted according to its ordinary meaning.

A statute is ambiguous if it can be read in more than one way. United States v. O'Neil, 11 F. 3rd 292 (1st Cir. 1993).

A normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.

In all cases of statutory construction the Court is required to interpret the words of these statutes in light of the purpose Congress sought to serve.

The object is to give effect to Congressional purpose so long as Congressional language does not bar that result. United States v. Lachman, C.A. I. (Mass) 2004 WC 2378087, Reno v.

Koray, 515 U.S. 50 (1995).

When rules of statutory construction produce conflicting results, court's must discern as closely as possible what the legislature intended. Helvering v. Stockholm Enskilda Bank, 293 U.S. 84 56 S. Ct. 50 (1934).

## CONCLUSION

For all of the reasons set forth above, the defendant is entitled to the requested relief.

Respectfully submitted,

THE DEFENDANT

BY: /s/ Vincent A. Bongiorni
95 State Street - Suite #309
Springfield, MA 01103
(413) 732-0222
BBO #049040

CERTIFICATE OF SERVICE

I, Vincent A. Bongiorni, Esq., do hereby certify that I have served a copy of the foregoing via CM/ECF to Assistant United States Attorney, Neil Gallagher, United States Courthouse, One Courthouse Way, Boston, MA this   day of April 2006.

/s/ Vincent A. Bongiorni