UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION  NO. 05-10235-GAO

UNITED STATES OF AMERICA

v.

GEORGE SAMUELS,
Defendant

MEMORANDUM AND ORDER
June 26, 2006

O'TOOLE, D.J.

The defendant is indicted for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1).  The government moved for the defendant's detention pending trial pursuant to 18 U.S.C. § 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A), on the grounds that he posed a danger to the community and was a serious flight risk.  At an evidentiary detention hearing held before Magistrate Judge Dein, Special Agent John Shankweiler of the DEA testified about the investigation leading to the defendant's arrest and recounted information obtained from a series of wiretaps conducted pursuant to warrants issued by a judge of the Massachusetts Superior Court, including a warrant that authorized the interception of communications via a telephone subscribed to by the defendant.  The defendant objected to the introduction of any evidence derived from the wiretap of his telephone, asserting that the warrant authorizing it was defective because it did not describe the communications to be intercepted with sufficient particularity.

On the basis of the evidence presented at the detention hearing, Magistrate Judge Dein concluded that there was no condition or combination of conditions that would reasonably assure the

defendant's appearance and the safety of the community. As a result, she ordered the defendant detained on September 16, 2005. The defendant has moved to revoke Magistrate-Judge Dein's detention order, arguing that evidence derived from the challenged electronic surveillance formed the "sole and exclusive basis" offered by the Government in support of the defendant's detention, that the defendant had produced sufficient evidence to rebut the presumption of detention that arises pursuant to 18 U.S.C. § 3142(e), and that the government had not produced enough evidence to meet its ultimate burden of persuasion on the detention issue. I review the order of detention *de novo*. See United States v. Tortora, 922 F.2d 880, 883-84 (1st Cir. 1990).

**I.   Applicable Principles**

The Bail Reform Act, 18 U.S.C. § 3142, contains the governing substantive and procedural rules regarding pretrial detention of defendants. Pursuant to § 3142(e), a court may order a defendant detained pending trial if it finds that no condition or combination of conditions set forth in § 3142(b) or (c) "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the Court must take into account:

>  (a)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>  (b)   the weight of the evidence against the accused;
>  (c)   the history and characteristics of the person, including --
>     (i)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (ii)   whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>  (d)   the nature and seriousness of the danger to any other person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).

If the court finds that there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, a rebuttable presumption arises that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community. See 18 U.S.C. § 3142(e). The defendant then bears the burden of producing some evidence that the presumption is unwarranted given the particular facts of his case. See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Jessup, 757 F.2d 378, 381-82 (1st Cir. 1985). Even where such evidence has been proffered in rebuttal, the presumption does not disappear; it retains evidentiary weight and is considered along with the other factors enumerated in §3142. See Dillon, 938 F.2d at 1416; United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987). Throughout the inquiry, the government retains the ultimate burden of persuasion. See Dillon, 938 F.2d at 1416.[1]

## II.     The Validity of the Wiretap Warrant

The defendant argues that much of the evidence presented by the government at the hearing and relied on by the magistrate judge in her detention ruling had been gathered as a result of the electronic surveillance conducted of his telephone. That evidence should not have been admitted, he says, because the warrant was defective and 18 U.S.C. § 2515 forbids the introduction of improperly derived evidence in "any trial, hearing, or other proceeding." If the evidence gathered

---

[1] A preponderance of the evidence standard applies to the proof of facts regarding the flight risk determination, but facts supporting a conclusion that the failure to detain the defendant would put the safety of the community at risk must be proved by clear and convincing evidence. 18 U.S.C. § 3142(f). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

illegally is excluded from consideration, he concludes, the government's case for detention was not, and cannot be, successfully made.[2]

The defendant argues that the electronic surveillance warrant issued by the state court in this case was insufficient on its face because it failed to meet the particularity requirements of both the state statute, Mass. Gen. Laws ch. 272, §§ 99 E(1) and I(4), and the federal statute, 18 U.S.C. § 2518(4)(c). The two statutes are substantially similar and require wiretap warrants to contain "particular" descriptions of the communications to be intercepted and a statement of the offense to which the communications relate. See Mass. Gen. Laws ch. 272, § 99 I(4) (warrant must contain "[a] particular description of the nature of the oral or wire communications to be obtained by the interception including a statement of the designated offense to which they relate"); 18 U.S.C. § 2518(4)(c) (warrant must contain "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates").[3]

Courts have recognized that the nature of electronic surveillance makes precise descriptions of anticipated conversations impracticable. See, e.g., United States v. Gambale, 610 F. Supp. 1515, 1538 (D. Mass. 1985). In Gambale, the court rejected the defendants' argument that conversations

---

[2] The government argues that § 2515 does not authorize an attack on the warrant in a detention hearing, and asks that I reconsider a ruling I made at the first of two hearings held on the present issues that permitted the defendant to make the objection that evidence unlawfully obtained by reason of a defective warrant should not be admitted. I have considered the arguments made for reconsideration, but adhere to my original ruling. In a detention hearing a defendant may, relying on § 2515, object to the introduction of evidence on the ground that the information was obtained by a warrant that did not comply with the requirements of § 2518(4)(c).

[3] Any failure to meet the standard established by the state statute would be immaterial to the present controversy. Federal law governs the admissibility in federal proceedings of evidence intercepted by wiretaps without regard to state law. United States v. Charles, 213 F.3d 10, 19 (1st Cir. 2000); United States v. Sutherland, 929 F.2d 765, 769 (1st Cir. 1991).

to be intercepted had to be described with the same degree of particularity as would be required to justify more traditional searches of places for physical evidence. See id. Recognizing that "conversations are not like physical evidence" because "[t]hey cannot be described with as much precision, nor can an applicant for a surveillance order know of their actual content in advance, since it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime," the court instead adopted a "flexible, pragmatic approach to the particularity requirement in the context of electronic surveillance." Id. (internal quotations and citations omitted). Thus, where a continuing course of criminal conduct is involved, "a [surveillance] order must necessarily be framed flexibly enough to permit interception of any statements concerning a specified pattern of crime." Id. (internal quotations and citations omitted). See also United States v. Tortorello, 480 F.2d 764, 780 (2d Cir. 1973) ("Although the nature and type of the anticipated conversations must be described, the actual content need not and cannot be stated since the conversations have not yet taken place at the time the application is made and it is virtually impossible for an applicant to predict exactly what will be said concerning a specific crime. The order must be broad enough to allow interception of any statements concerning a specified pattern of crime.") (citation omitted).

The key question is whether an executing officer, reading the warrant, would understand what limits were placed on the authority to intercept – that is, whether the warrant's description of the communications authorized to be intercepted was sufficiently particular to give clear direction as to which communications could be lawfully intercepted and recorded and which could not. As Gambale and other cases have recognized, the same kind of language that can be used to describe particular existing places or things is not suited to describing conversations or other communications that do not yet exist. Even descriptions of physical objects that may or will exist in the future must necessarily

be more general and therefore less particular than descriptions of already existing and observable objects. Similarly, descriptions of past recorded conversations can be more particular than descriptions of yet-to-occur conversations.

One particularizing limitation that could be helpful in providing the necessary direction to executing officers would be to describe communications that may and may not be intercepted by reference to the *participants*. For example, the warrant could identify specific persons, notably co-conspirators, whose communications with the target can be expected, on the basis of reliable information, to be about criminal activity.

Another useful limitation would be to describe, categorically by necessity, what *content* of communications can be the subject of interception. For instance, where there is probable cause to believe the target is a drug dealer, the warrant may authorize the interception of conversations about drug dealing. With regard to content, however, there are two difficulties that have to be addressed. The first is generality. An obvious way to keep the topical description of the type of communication that may be intercepted from being too broad is to relate it to the probable cause showing that supports the issuance of the warrant. Where the information developed in the pre-application investigation supports a conclusion that Smith and Jones are distributing cocaine, the targeted communications can be described as "conversations concerning the distribution of cocaine by Smith and Jones."

The other difficulty is ambiguity. For instance, "conversations concerning the distribution of cocaine" are not likely to involve the actual use of the word "cocaine." It is unlikely in the extreme that sophisticated dealers will speak over the telephone in explicit terms about their criminal

activity. The problem is not slang, but code. Common slang terms could be particularly enumerated ("blow," "candy," "snow," etc.), and interceptions could be limited to those in which either the word "cocaine" itself or an itemized slang substitute was used. But drug dealers are probably no more likely to use a well-known synonym for cocaine as they are to use the word itself.

Rather, what they are likely to do is to code their messages. "I need to get some flowers to send to my girlfriend" may be about roses, but it also may be a coded request between knowing confederates for replenishment of a drug supply. Where probable cause supports the issuance of a warrant to intercept telephone conversations about distributing cocaine, it is necessary and proper to intercept the statement "I need to get some flowers to send to my girlfriend" when it is *in fact* a statement about distributing cocaine. Whether it is or not can only be determined by inference from context interpreted in the light of experience. In other words, whether to understand the statement as one about cocaine and not roses is, in the end, a judgment call. The soundness of such judgment calls can be reviewed retrospectively. Prospectively, however, it is not practicable to insist that a warrant accurately predict what form of words will be used to convey the substance of a message that may be intercepted.

Thus, the *substance* of communications to be intercepted can be described in advance, but the *words in which that substance will be expressed* cannot be. The particularity requirement must be understood and applied harmoniously with this reality.

In the warrant the defendant challenges, the issuing judge recites that she had found probable cause to believe that the defendant and other named individuals had committed and continued to commit offenses involving the distribution of cocaine and trafficking in cocaine in violation of specified Massachusetts statutes. The warrant identifies a particular target telephone by number,

current user and subscriber, and indicates that the purpose of the electronic surveillance was to assist investigators in "establishing the identification and association of the members of the conspiracy[,] including those members whose identity is presently unknown" and "providing evidence as to the scope and detail of the inner workings of the conspiracy[,] including its plans, methods, and activities in distributing cocaine and trafficking in cocaine." This statement identifies by particular topics those communications that may be intercepted, in the realistic way described above. The reference to the members of the conspiracy is a particular reference to those identified specifically as such by name in the warrant. The warrant describes the conspiracy as particularly relating to the distribution of cocaine. The directions to the executing officers are clear enough: You may intercept those communications over the target telephone that are evidence of, or acts in furtherance of, the criminal conspiracy existing among the named persons (and perhaps others whose participation will be revealed by the intercepts) to traffic in cocaine, and beyond such communications you may not.[4] Thus, both by reference to the participants and the substance of the communications, the warrant provides as particular a description of the communications to be intercepted as it is realistic to expect. See United States v. Williams, 45 F.3d 1481, 1485 (10th Cir. 1995).

The warrant does not violate the particularity requirement of 18 U.S.C. § 2518(4)(c). Evidence gained from the interceptions authorized by the warrant need not be, and are not, excluded under the authority of 18 U.S.C. § 2515.

---

[4] The warrant further directs monitoring agents to stop intercepting communications "unrelated to the specified narcotics offenses" after two minutes and permitted them to spot-check conversations for no more than fifteen seconds in any subsequent minute in order to determine whether the conversation remained "unrelated to the designated offense."

**III.    Factors Affecting the Detention Decision**

As noted above, the statute enumerates several factors to be considered by a court when making a decision whether to detain a defendant pending trial or to release him with or without conditions. 18 U.S.C. § 3142(g).  Having in mind these factors, I have reviewed the transcript of the detention hearing and make the following findings and conclusions relevant to the detention determination.

*Nature of the Offense and the Weight of the Evidence Against the Defendant*

The defendant is charged with conspiracy to distribute cocaine and possession with intent to distribute five kilograms or more of cocaine. If convicted, he faces a sentence of imprisonment ranging from a mandatory minimum of ten years to a maximum of life imprisonment, as well as a substantial monetary fine.  It is premature to try to assess with any fineness the net weight of the evidence against him, but there are some matters of evidence that appear at this point to tend rather strongly in the government's favor.  It is sufficient for these purposes to note the evidence of his participation with others in the distribution of cocaine and the discovery of 26 kilograms of cocaine in the car parked in his home garage.

A reasonable prospect of conviction coupled with a then certain prospect of serious punishment suggest a strong motive to flee if free to do so. The statute, as noted, raises the presumption that such is the case, but even without the presumption, the same inference is recommended by experience and common sense.  Flight might be expensive, but the evidence shows that the defendant has had access to substantial amounts of cash, as is illustrated by the fact that immediately after his arrest his wife withdrew approximately $123,000 in cash from a local bank.

9

It is also the case that if the defendant is the drug dealer the government says he is, his release into the community would raise a substantial risk that he will continue his criminal activity, acting, to put it in the statutory terms, to put the safety of persons in the community at risk. (An apparently unlicensed firearm was found in the same search of his house that discovered the large quantity of cocaine.) While one might suppose that a person under indictment would be on his best behavior pending trial and avoid transacting any illegal drug business, the lure of illegal profits of the size drug dealers reap may override the more sensible course. The wholesale value of the drugs seized from the car in his garage was estimated to be in the range of $500,000, with a retail value somewhere between 5 and 10 times that amount. Indeed, the temptation to continue dealing may be motivated by the temptation to flee: flight might be financed by a couple of sales that could bring large payoffs.

*History and Characteristics of the Defendant*

The defendant has strong ties to the Springfield area. He was born there and is a lifelong resident. His parents and brother also live in Springfield. He received his high school diploma from Bridge Academy and was then enrolled at Springfield Technical Community College for a short period of time.

The defendant and his wife have been together since 1992 and have three children. The defendant owns his own business, GS Trucking, which serves as a subcontractor to large asphalt companies. At the detention hearing, defense counsel indicated that the defendant also worked for the Massachusetts Department of Mental Health for ten years and has, since 1994, engaged in the buying and selling of various residential properties in the Springfield area.

With respect to the defendant's character, a large number of letters from his supporters have been submitted. The letters almost uniformly characterize him as a hardworking and honest family man. However, the defendant does have both a juvenile and adult criminal record, albeit a relatively minor one. As an adult, he has been found guilty of being a disorderly person–in 1990, 1992, and 1993–and was fined. There is some indication that the defendant was charged with possession of cocaine with intent to sell in 1989, but the disposition of that case is unknown, and the information is thus of no significant value.

### *Proposed Conditions*

The defendant proposes release upon conditions, including the posting of a substantial bond secured by real estate owned by him and his parents and by a forfeiture agreement, home detention with electronic monitoring, travel restrictions, and regular and frequent reporting to Pretrial Services. The government's position is that even these conditions are insufficient to reasonably assure either the defendant's appearance when required or the safety of the community.

## IV.    Conclusion

Even if I were to conclude that the evidence offered by the defendant was sufficient to rebut the presumption that his detention was necessary to reasonably assure his appearance and that his ties to the area together with the proposed release conditions would limit the likelihood of flight, I would still find that the defendant's detention is necessary in order to reasonably assure the safety of the community. Given the considerable quantity of cocaine found in his residence, the confidential witness's statement that the defendant had been a "kilogram quantity distributor of cocaine" in the Springfield area for several years, and the evidence from electronic and physical surveillance suggesting that the defendant was connected to an extensive narcotics-trafficking organization, I

conclude that there is no condition or combination of conditions that will reasonably assure the safety of the community if the defendant is released. Therefore, the defendant's motion to revoke the detention order issued by Magistrate Judge Dein is DENIED.

It is SO ORDERED.

| | |
|---|---|
| June 26, 2006 | \s\ George A. O'Toole, Jr. |
| DATE | DISTRICT JUDGE |