## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs.  ) | 05-CR-10235-GAO |
| ) | |
| SERGIO ALCANTARA-SALDANA et al ) | |
| ) | |

### NOTICE OF EVIDENCE REGARDING
### WITNESS TESTIMONY OF INTERCEPTED PHONE CALLS

The United States respectfully submits this notice and pretrial memorandum regarding the testimony of DEA Special Agents John Barron and John Shankweiler and DEA Task Force Agent Jaime Cepero (also a MSP Trooper). At trial, each of these three witnesses will testify about their individual understanding and subjective interpretation of the meaning of certain code words, slang, and other ambiguous words spoken during the intercepted calls of the defendants which will be introduced at trial.

### I. STATEMENT OF LAW

**A.   Narcotics Expert Testimony**

Rule 702 of the Federal Rules of Evidence permit experienced law enforcement agents to provide opinion testimony as expert witnesses in drug prosecutions: "Expert interpretation of drug jargon and practices, supplied by one versed in the business, has often been admitted to assist the trier of fact in drug-trafficking cases." United States v. Ladd, 885 F.2d 954, 960 (1st Cir. 1989); see also United States v. Valle, 72 F.3d 210, 215 (1st Cir. 1995)("Matters involving dosages, prices, and other particulars endemic to the ingestion and distribution of crack cocaine are beyond the ken of the average juror. Consequently, expert testimony on these subjects is likely to help the jury and, hence, if sanctioned by the trial judge, is admissible in evidence.") As

the First Circuit recognized in Valle, most other Circuits have reached the same conclusion and "have regularly upheld the admissibility of such expert testimony based upon the trial judge's belief that it would help the jurors." Id. at 215 (collecting cases).

"Frequently, some of the details of drug operations, as they emerge in intercepted conversations, are quite opaque." United States v. Dukagjini, 326 F.3d 45, 53 (2d Cir. 2003). "Because the primary purpose of coded drug language is to conceal the meaning of the conversation from outsiders through deliberate obscurity, drug traffickers' jargon is a specialized body of knowledge and thus an appropriate subject for expert testimony." United States v. Gibbs, 190 F.3d 188, 210 (3rd Cir. 1999). While the First Circuit has not directly addressed the issue, other Circuits, including the Second and the Eleventh Circuit, have recognized the competency of experienced law enforcement agents to testify about the meaning of code words, slang, and ambiguous used by members of a drug organization.  "Drug jargon 'is a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony.'" United States v. Freeman, 498 F.3d 893, 900 (9th Cir. 2007)(quoting United States v. Griffith, 118 F.3d 318, 321 (5th Cir.1997)).  See United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006)("[The agent's] testimony about drug traffickers' use of code words, for example, was probative because drug dealers often camouflage their discussions ... [and] expert testimony explaining the meanings of code words may 'assist the trier of fact to understand the evidence or to determine a fact in issue."); United States v. Gray, 410 F.3d 338, 347 (7th Cir. 2005)("We find that this experience, as well as his specific experience with these defendants, qualified him to interpret the drug code they used."); United States v. Cruz, 363 F.3d 187, 193 (2d Cir. 2004)("we have held that experienced narcotics agents may explain the use and meaning of codes and jargon developed by drug dealers to camouflage their

activities.").

## B.    Lay Witness Opinion Testimony

"[O]pinion testimony is not limited to experts." United States v. Garcia, 994 F.2d 1499, 1504 (10th Cir. 1993). Although the First Circuit has not directly addressed this issue, several other circuits have allowed a law enforcement agent to testify as lay witnesses about such topics. United States v. Miranda, 248 F.3d 434, 441 (5th Cir. 2001); United States v. Novaton, 271 F.3d 968 (11th Cir. 2001), holding modified by Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 n.7 (11th Cir. 2003)(extending Novaton's holding to post-amendment Rule 701); United States v. Garcia, 994 F.2d 1499, 1507 (10th Cir. 1993); but see United States v. Villarman-Oviedo, 325 F.3d 1, 12-13 (1st Cir. 2003)(upholding district court's admission of law enforcement agent's interpretation of code words as lay testimony, but not deciding whether subject was proper for lay testimony because witness was experienced and defendant had ample notice of witness's specialized knowledge.")

For a law enforcement agent to testify about his opinion as a lay witness concerning conspiracy specific phrases heard through a wiretap, the witness must have personally perceived the conversation as it occurred.  United States v. Peoples, 250 F.3d at 641; United States v. Novaton, 867 F.Supp. 1023, 1025 (S.D. Fl. 1994). This does not require that the agent engage in the conversation in question or that the participants must be aware of the agent's presence, but that the agent overhead the conversation at the time it occurred over the wiretap. United States v. Novaton, 867 F. Supp. at 1025; compare United States v. Peoples, 250 F.3d 630, 640-41 (8th Cir. 2001)(error to admit an FBI agent's lay testimony about the meaning of conspiracy-specific words, because agent had not listened to the conversations as they occurred and instead based her

opinion only on "investigation after the fact"). In United States v. Novaton, monitors of wiretap conversations were allowed to testify as lay witnesses concerning references to planned drug sale events because the monitors testified only about conversations that they themselves listened to as the conversation occurred. 867 F.Supp. at 1025, 1026.

The Fifth, Eighth and Eleventh Circuits have held that an agent might have personal knowledge of the facts of the conversation based listening to the overheard conversation at some point in time, and on his overall participation in the wiretap investigation or experiences with the suspects. See United States v. Peoples, 250 F.3d at 641; United States v. Miranda, 248 F.3d at 441; United States v. Novaton, 271 at 1008.

Significantly, the First Circuit has found that the perception requirement of Rule 702 could be meet by personal knowledge based on past experience or even experiences that occur later. See United States v. Wilkerson, 411 F.3d 1, 7 (1 st Cir. 2005); United States v. Ayala-Pizarro, 407 F.3d at 28-29. In United States v. Ayala-Pizarro, a policeman was allowed to testify as a lay witness about a certain street being a drug point. 407 F.3d at 28-29. There, the First Circuit held that the police officer had met the first hand perception requirement because he had "particularized knowledge" as the police officer whose assignment was to patrol that street frequently. Id.  Similarly, in United States v. Wilkerson, the First Circuit allowed a detective to testify his opinion as to the meaning of the defendant's post-arrest statement concerning his attempt to escape capture. 411 F.3d at 6-7. The court found that the detective had met the "perception" requirement because he had "special familiarity" with the defendant's escape route, having investigated it both before and after interrogating the defendant. Id.

**C.     DEA SA Barron and Shankweiler**

Agents Barron and Shankweiler were co-case agents of the investigation and were present in the wiretap monitoring room at DEA (the "wire room") when calls were intercepted over the court authorized wiretaps. For the vast majority of the more than 20,000 phone calls intercepted over the wiretaps in this case, including the wiretap calls that will be presented at trial, agents Barron and Shankweiler were either: (1) present in the wire room when calls in Spanish were simultaneously summarized and translated for them in English by government contractor interpreters; and/or (2) reviewed summaries and preliminary transcripts of intercepted calls shortly after they took place. When the calls took place in English, SA Barron and Shankweiler either listened to the call in real-time or reviewed them shortly afterwards.

The government will seek elicit the following testimony during the examination of SA Barron and/or SA Shankweiler. First, the authentication of the wiretap. This will include testimony about how the wiretap calls were monitored, recorded and stored as evidence. SA Barron and/or Shankweiler will testify about the authenticity of the audio recordings as well as call detail data that revealed the date, time, duration, and dialed numbers during the phone calls.

Second, SA Barron and/or SA Shankweiler will testify about what they did and some of the investigative decisions that they made during the wiretap investigation as result of the intercepted calls. In particular, SA Barron and/or SA Shankweiler will testify about the surveillance they personally conducted and the observations they made during surveillance. SA Barron and/or SA Shankweiler will also testify about how they relayed some of the information to the agents in the field gleaned from the wiretaps.

Third, SA Barron and/or SA Shankweiler will testify about their individual understanding

and subjective interpretation about the meaning of some of the of the meaning of certain code words, slang, and other ambiguous words spoken during the intercepted calls of the defendants and unindicted co-conspirators. Their interpretations will be based on: (1) their training and experience from prior investigations; and (2) the intercepted phone calls that they either monitored or reviewed during this investigation coupled with the personal observations they made during their own physical surveillance of the defendants and other individuals in Massachusetts and New York City.

**D.     DEA Task Force Agent Jaime Cepero**

TFA Cepero, who has also been a Trooper with Massachusetts State Police ("MSP") for more than 25 years, was not directly involved in the investigation of this case. TFA Cepero's sole participation in the case will be his review of the intercepted phone conversations that will be admitted into evidence. TFA Cepero is a native Spanish speaker who has been involved in countless drug investigations involving Spanish speaking wiretaps and has been previously qualified as an expert witness in federal court in the District of Massachusetts regarding drug lingo.

At trial, TFA Cepero will testify that in drug wiretap investigations, drug traffickers often use coded and veiled references to hide their locations, the participants in a drug transaction or conspiracy, and rarely (if ever) use the words "cocaine" or "drugs." More specifically, TFA Cepero will testify that individuals involved in the distribution of large amounts of illegal drugs, particularly cocaine and heroin, will often talk around the subject of drugs and use any word, besides "drugs," to refer to the real topic of their conversation. TFA Cepero will testify that while there is not a standard glossary of drug code words, some words have repeatedly used in

drug investigation. For example, TFA Cepero will testify, based on his prior experience, that drug traffickers often use the words "tickets" or "papers" for drug proceeds, and a *"foto"* or "photo" as a sample of drugs.

Finally, TFA Cepero will testify about a portion of the already admitted wiretap conversations and about how these phone calls, which he listened to and reviewed prior to trial, are consistent with this training and experience about drug traffickers communicate on the telephone.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Neil J. Gallagher, Jr.
Neil J. Gallagher, Jr.
Rachael Hershfang
Assistant U.S. Attorneys
One Courthouse Way
Boston, MA

Date: October 29, 2007

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and mailed to all those not participating in ECF.

/s/ Neil J. Gallagher, Jr.
Neil J. Gallagher, Jr.